EAGLE WHITE LEAD CO. v. PFLUGH et al.

(Circuit Court, D. New Jersey. August 3, 1910.)

1. TRADE-MARKS AND TRADE-NAMES (§ 96*)—INFRINGEMENT—PRIOR ADJUDICATIONS.

Prior adjudication in favor of complainant in a suit for trade-mark infringement against others and a prior successful prosecution of an interference in the Patent Office between complainant and defendants, with reference to the same mark, while not controlling in a subsequent suit by complainant against defendants for infringement, were forceful factors on the issue of prior adoption and use of such trade-mark by complainant.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Dec. Dig. § 96.*]

2. TRADE-MARKS AND TRADE-NAMES (§ 93*)—INFRINGEMENT—PRIORITY OF ADOPTION.

In a suit for trade-mark infringement, evidence *held* to show complainant's priority of adoption of the mark in question.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Dec. Dig. § 93.*]

3. TRADE-MARKS AND TRADE-NAMES (§ 57*)—"INFRINGEMENT"—EXTENT OF SIMILARITY.

Duplicity 'or exact imitation is not necessary to the infringement of a trade-mark, nor is dissimilarity in size, form, and color of the label and place where it is applied conclusive, it being sufficient that the competing label contains the trade-mark of another, and that confusion or deception is likely to result, independent of the fact that the accessories are dissimilar.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. § 65; Dec. Dig. § 57.*

For other definitions, see Words and Phrases, vol. 4, pp. 3593, 3594.]

4. TRADE-MARKS AND TRADE-NAMES (§ 55*)—INFRINGEMENT—KNOWLEDGE.

A trade-mark may be infringed, though the appropriation of the symbol, which is the main characteristic of the mark, may have been without knowledge that another had obtained the right to its exclusive use.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. § 63; Dec. Dig. § 55.*

Restraining infringement of trade-mark or trade-name as defendant on knowledge or intent of infringer, see note to Hutchinson, Pierce & Co. v. Loewy, 90 C. C. A. 4.]

5. TRADE-MARKS AND TRADE-NAMES (§ 57*)—INFRINGEMENT—IMITATION.

Infringement of a trade-mark may exist, though the method and accompaniments of its use negative the idea of imitation.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. § 65; Dec. Dig. § 57.*]

6. TRADE-MARKS AND TRADE-NAMES (§ 58*)—INFRINGEMENT—ADJUDICATION.

Trade-marks No. 60,062, registered January 29, 1907, covering a representation of an eagle, and No. 60,993, covering the word "Eagle," used in connection with the sale of white lead, held infringed by defendants' use of the words "Gold Eagle," used in connection with a representation of that bird, though with different accessories.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Dec. Dig. § 58.*]

7. TRADE-MARKS AND TRADE-NAMES (§ 66*)—RIGHT TO PROTECTION.

The owner of a registered trade-mark is not required to await the effect of infringement and prove actual injury either to himself or the purchasing public, but may sue to prevent, as well as to stop, confusion.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Dec. Dig. § 66.*]

8. TRADE-MARKS AND TRADE-NAMES (§ 86*)—INFRINGEMENT—LACHES—FORFEITURE.

Mere delay unattended with such circumstances as show acquiescence in the use by another of an infringing trade-mark will not produce a forfeiture so as to prevent an injunction against further infringement.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. § 95; Dec. Dig. § 86.*

Laches as a defense in suits for infringement, see notes to Taylor v. Sawyer Spindle·Co., 22 C. C. A. 211; Santana Live Stock & Land Co. v. Pendleton, 26 C. C. A. 613.]

9. TRADE-MARKS AND TRADE-NAMES (§ 86*) — INFRINGEMENT — DAMAGES — LACHES.

Complainant on February 1, 1893, advised defendants of its right to a trade-mark which defendants were then infringing, but complainant not then operating in defendants' field did not follow up the letter with legal proceedings. In July 1901, complainant again wrote defendants, reasserting its right and demanding that defendants desist from using the infringing mark. On March 12, 1906, an interference was declared in the Patent Office involving complainant's right in the marks in question and successfully prosecuted. Held, that complainant was guilty of such laches as to be tantamount to a license to defendants to continue the infringement, which, though revocable at will, precluded complainant from recovering damages which inured before suit brought, entitling complainant only to an injunction against further infringement.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. § 95; Dec. Dig. § 86.*]

In Equity. Suits by the Eagle White Lead Company against Albert Pflugh and another, copartners, doing business as Pflugh & Co., for infringement of complainant's registered trade-marks as applied to white lead, to wit, trade-mark No. 60,062, registered January 29, 1907, covering a representation of an eagle and trade-mark No. 60,993, registered February 26, 1907, covering the word "Eagle." Prayer for injunction granted, but accounting of profits denied.

W. H. Singleton and C. E. Riordon, for complainant.
Clifton V. Edwards and Julian S. Wooster, for defendants.

RELLSTAB, District Judge. This is a trade-mark case, and not one of unfair competition. The bills allege ownership of the trade-marks in complainant, and continuous use by it and its predecessors since 1843, adjudication in complainant's favor in a prior suit, decision in its favor in an interference in the Patent Office against these defendants, acquiescence in complainant's rights therein by the public, except by the defendants, and use by them without permission of the infringing trade-marks. The answers admit the adverse decision in the Patent Office, deny infringement by the use of either of said alleged trade-marks, deny general acquiescence in complainant's alleged rights, deny that any deception has been practiced by defendants, set up anticipation, and assert that complainant's rights, if it ever had any, to an injunction or accounting, have been forfeited by laches.

The complainant was incorporated in 1867, and at that time succeeded to the business of Wood & Co. and Wood & McCoy, who had been in the white lead business since 1843. For brevity, the word "complainant" will be used to include not only the present complainant, but its several predecessors. As early as 1854 and ever since, the complainant has manufactured and sold a pure white lead designated as "Eagle" lead. The packages (wooden kegs and tin cans) containing this lead always bore the word "Eagle" or a representation thereof, usually both. The complainant's place of manufacture, as well as its principal business office, was and is Cincinnati, Ohio. During its early existence, its sales were confined to that and neighboring states. No business was done by it in New York City and vicinity until after the formation of the defendant firm and the adoption by it of the alleged infringing trade-mark, and very little until about 1900. The defendants began the manufacture and sale of paints and white lead in 1889. Their place of manufacture was and is Hoboken, N. J., and their principal market is in the city of New York and vicinity. In 1890 defendants adopted as a trade-mark for their white lead (not pure, but a combination) the words "Gold Eagle," accompanied with the representation of an eagle, with which it branded or labeled such product, which was marketed in wooden kegs and tin cans. This trade-mark was registered on February 7, 1893, No. 22,437, and has since continually been used and advertised by defendants in the marking and sale of such product. In the course of years, the business of the complainant and the defendant increased considerably, and their products are now, and have been for some time, marketed amongst the same trade in certain places.

In a suit brought in the United States Circuit Court, Northern District of Illinois, E. D., against Monroe Heath and William F. Milligan, for infringement of the trade-marks here involved, a decree was entered under date of July 7, 1876, in which the complainant was adjudged to be the owner of the trade-mark, and the defendants therein were restrained from using the words "Eagle," "American Eagle," or "Western Eagle," or any words similar to, or only colorably different from, such words, or any mark, especially the figure of an eagle, as applied to white lead. In an interference in the United States Patent Office between the complainant and the defendants, No. 25,816, following application by complainant for registration of its said trade-marks, the complainant was held to be the first to adopt and use the trade-marks in issue and entitled to registration thereof over the defendants. These adjudications, while not controlling, are forceful factors on the questions of prior adoption and use by complainant of such trade-marks, the acquiescence of others in complainant's rights thereto, and the similarity of defendants' trade-mark to that of complainant.

The evidence is overwhelming that as between the parties to this suit the complainant, by at least 35 years' continuous use before the defendants' advent into the business world, had obtained the right to the trade-mark "Eagle" in both word and representation, as applied to white lead. The several instances of the use by others of an eagle as a trade-mark to white lead are all, except in the case of Wetherill & Bro., of recent date as compared with either complainant or Wetherill & Bro., and are not evidential on the question of prior adoption and use. In the case of Wetherill & Bro., however, a serious question of priority is raised. They and the complainant have been manufacturers and vendors of white lead for many years. Both very early in their business career adopted and used the trade-mark "Eagle," both by word and representation, on their white lead products, the former on their first quality (pure), the latter on their second quality (combination). The exact time when each first used such trade-mark is not established. On the evidence submitted, however, giving full credit to the country order book obtained from the Wetherills, I am of the opinion that the complainant was the first to use such trade-mark. The earliest date given of the use of such mark by Wetherill & Bro. is in 1855. Complainant's witness, Edmund S. Wood, speaks of the use of such mark by complainant when he was about the age of 10 or 12 years, which, with his other testimony, fixes the time as between 1853 and 1855. The bill of complaint filed by the complainant in its suit against Heath & Milligan, hereinbefore mentioned, and which was introduced in evidence by the defendants, alleges that a representation of an eagle as a trade-mark was used by the complainant long before 1854.

While this evidence is not satisfying beyond a reasonable doubt, yet in view of the recognized difficulty in securing at this day satisfactory evidence of the condition of affairs of 55 or 60 years ago, and the voluntary abandonment by Wetherill & Bro., of its claim in such interference proceedings, and the subsequent assignment by them to complainant, without compensation, of whatever rights they had to

such trade-mark, it is persuasive of the priority of use by complainant of such trade-mark, even against Wetherill & Bro. Again, it must be remembered that, in view of the satisfactorily established long continued use by the complainant and the subsequent official registration of such trade-marks, the burden of proof on the question of prior use is upon the defendants. This burden, suffice it to say, has not been met.

But it is said that the complainant's trade-mark, as used before the registration, is not the word "Eagle" nor the picture of one alone. True, in the use of these trade-marks, neither the word or representation was used alone nor in conjunction with one another only. Other printed matter always accompanied them, and this matter was not always the same. The succession of proprietorship occasioned a change of the name accompanying such trade-marks, such as the substitution of "William Wood & Company" for "Conkling, Wood & Company," and "Eagle White Lead Company" for "William Wood & Company." Changes in other of the printed matter occasionally took place, such as eliminating the words "Eagle Works," and transposing the word "pure"; but with all such changes the one prominent and dominant feature of the brand or label was "Eagle," whether manifested by word or picture, and however accompanied. It was this feature that characterized this particular brand of white lead among other manufactures, whether of the same or other manufacturers. This was the trade-mark, and the registration of it alone in the one instance by word and the other by representation accorded with the fact.

The question of infringement is to be determined by this test of dominancy. The dissimilarity in size, form and color of the label, and the place where applied are not conclusive. If the competing label contains the trade-mark of another, and confusion or deception is likely to result, infringement takes place, regardless of the fact that the accessories are dissimilar. Duplication or exact imitation is not necessary; nor is it necessary that the infringing label should suggest an effort to imitate. The appropriation of a symbol may be without knowledge that another has obtained the right to its exclusive use. Bass et al. v. Feigenspan (C. C.) 96 Fed. 206; Morgan Sons Co. v. Ward, 152 Fed. 690, 81 C. C. A. 616, 12 L. R. A. (N. S.) 729; McLean v. Fleming, 96 U. S. 245, 24 L. Ed. 828; Hutchinson, Pierce & Co. v. Loewy, 163 Fed. 42, 90 C. C. A. 1; Gilka v. Mihalovitch (C. C.) 50 Fed. 427; Hygeia Distilled Water Co. v. Consolidated Ice Co. (C. C.) 144 Fed. 139, affirmed 151 Fed. 10, 80 C. C. A. 506. The method and accompaniments of its use may negative the idea of imitation and yet infringement exist.

Having this test and the rules in applying it in mind, do the words "Gold Eagle," used in connection with a representation of that bird, infringe the complainant's trade-mark? The eagle is its trade-mark, not the size and color of the letters constituting the word, or the posture of the representation; nor the form, color, or size of the label upon which the word or picture appears; nor the color of the imprint; nor the particular place on the goods where the label or brand is applied. All of the latter are accessories. They furnish but the en-

vironments. They may be changed at will. That the owner of the trade-mark "Eagle" has begun its use by employing a round label of light color printed in black ink and pasted on top of the package does not bind it to continue to so use it, or permit another to use it, by merely changing its size, form, or character, or the size or position of the letters constituting the word, or the posture of the bird or the color of the ink in which it is pictured. These are nonessentials. The defendants' own reservations in their application for their trade-mark furnish their mental attitude in regard to these. They said:

"Our trade-mark consists of the arbitary words 'Gold Eagle.' These have generally been arranged as shown in the accompanying facsimile, in which they appear in capital letters in a curved line above a representation of an eagle with wings spread, but other styles of letters may be employed, or it may be differently arranged or colored, and the representation of an eagle may be changed at pleasure or omitted altogether without materially altering the character of our trade-mark, the essential feature of which is the words 'Gold Eagle.' "

Nor does the fact that no confusion in the trade has resulted from the use of these "Eagle" labels by the parties to this suit prevent the complainant from maintaining his present bill. Gannert v. Rupert, 127 Fed. 962, 62 C. C. A. 594; Hutchinson, Pierce & Co. v. Loewy, supra.

That confusion is likely to result from the use of eagles as trademarks when applied to white lead products is established by the experience of complainant and Wetherill & Bro. after complainant's eagle brand of goods entered the Philadelphia market in competition with Wetherill & Bro's. products. As already shown, it is only of late years that the product of these parties has entered the same market. The party owning a trade-mark registered for his protection may prevent, as well as stop, confusion. He is not required to await the effect of the onslaught of the infringer, and be put to the burden of proving actual injury either to himself or the purchasing public. In fact, if he delays too long to assert his rights, he may find himself estopped from recovering damages as a penalty for his delay in bringing suit. The question is not, How far has the infringement proceeded? but, Does it exist? In my judgment there can be but one answer to this question. What has been said of the prominent and dominant feature of the complainant's label applies equally to the defendants'. It is the eagle that strikes the eye and gives character and potency to the brand. In the defendants' application for registration they said that the words "Gold Eagle" is the essential feature, and the accompanying drawing shows but the words and the representation. The eagle in both labels is the dominant feature. All the rest of the printed matter, as well as the form and color of the label, is but accessorial, and may be changed without affecting its potency as a trade-mark. The defendants' trade-mark so closely resembles the complainant's as to constitute a clear infringement.

The remaining question relates to laches. The complainant has been guilty of delay in bringing this suit, and because of it the defendants contend that it has forfeited its right to an injunction and accounting. Mere laches will not produce such forfeiture. Even in

cases of unfair competition the proprietor of an unregistered trade-mark is not bound as a matter of law to bring suit against one using a similar mark unless and until such person enters his field and seeks to deprive him of his trade, and until his business is actually affected. The delay must be attended with such circumstances that acquiescence in the use by another is inferred. There must be either a waiver or an abandonment of rights. Nims, Unfair Competition, pp. 506, 512, 513. As long as the person originally entitled to the use of his trade-mark asserts his right thereto, no such equities arise in favor of the infringer as to prevent his being enjoined from further use.

A number of labels used by other traders showing representations of an eagle were introduced in evidence by defendants under their defense of laches, but many of these were not used on white lead, and of the others some during very short periods, and none seem to have been brought to the attention of complainant before its present suit, except in the few instances in which the use of the labels ceased upon complainant's remonstrances.

In the present case, when the infringement began, complainant had no market in the territory covered by the defendants' operations. No pecuniary injury was likely to result to it while such condition continued. Being entitled to the exclusive use of its trade-mark, it had the right at any time to prevent such infringement. It did remonstrate by letters and the prosecution of interference proceedings in the Patent Office. As early as 1893, the defendants were advised by letter (dated February 1, 1893) of complainant's asserted rights in such trade-mark. The failure of complainant to follow up this letter with legal proceedings in my judgment disentitles it to an accounting for past profits, but it is not sufficient to forfeit its rights to protection against future infringement. From that time the defendants 'took the risk of continued infringement, and the complainant that of waiving its rights in whole or part by a long continued delay in bringing suit. After sending this letter, complainant established an agency in New York City, which, however, was soon abandoned, and no further effort to secure a market in that vicinity was made until 1900. In July, 1901, complainant again wrote to defendants, reasserting its rights and calling upon them to desist from using the infringing mark. On March 12, 1906, an interference was declared in the Patent Office involving the application of complainant, defendants, and Wetherill & Bro. for trade-marks, resulting in the establishing of complainant's rights to the trade-mark in issue as against these defendants. The continued assertions of complainant's rights negative the notion of acquiescence and entitles it to the injunctive relief prayed.

The neglect of complainant, however, to bring suit for such length of time, must be considered as a waiver of damages. By its delay in proceeding against defendants, they were encouraged in their insistence that their trade-mark did not infringe complainant's, and to a continued use of it in building up their trade. Such delay on complainant's part was tantamount to a license, and, while revocable at will, should be treated in equity as a waiver of the profits that have inured before bringing suit. These conclusions on the question and

effect of laches are supported by McLean v. Fleming, supra; Menendez v. Holt, 128 U. S. 514, 9 Sup. Ct. 143, 32 L. Ed. 526; Bissell Chilled Plow Works v. T. M. Bissell Plow Co. (C. C.) 121 Fed. 357; Hygeia Distilled Water Co. v. Consolidated Ice Co., supra.

The prayer for injunction is granted, but that for an accounting of profits and damages is denied.