QUEEN MFG. CO. v. ISAAC GINSBERG & BROS., Inc.

Circuit Court of Appeals, Eighth Circuit.
March 6, 1928.

No. 7894.

1. Trade-marks and trade-names and unfair competition ⊚⟶57—Copying distinctive part of trade-mark may constitute "infringement" without copying entire mark (15 USCA § 96).

To constitute "infringement" of a trade-mark under 15 USCA § 96, it is not necessary that the trade-mark be literally copied nor that every word be appropriated, but there may be infringement where the substantial and distinctive part of the trade-mark is copied or imitated.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Infringement.]

2. Trade-marks and trade-names and unfair competition ⊚⟶60—Dissimilarity in size, form, and color of label and place where applied are not conclusive against infringement of trade-mark (15 USCA § 96).

Dissimilarity in size, form, and color of label and place where it is applied are not conclusive against infringement of trade-mark under 15 USCA § 96.

3. Trade-marks and trade-names and unfair competition ⊚⟶57—Use of dominating word in another's trade-mark may constitute infringement, though marks are otherwise dissimilar (15 USCA § 96).

Where a trade-mark contains a dominating or distinguishing word, and purchasing public has come to know and designate the article by such dominating word, the use of such word by another in marking similar goods may constitute infringement under 15 USCA § 96, though the marks aside from such dominating word may be dissimilar.

4. Trade-marks and trade-names and unfair competition ⊚⟶57—Trade-mark is infringed if resemblance deceives ordinary purchasers using ordinary caution (15 USCA § 96).

Whether an imitation which is not an exact copy of a trade-mark constitutes infringement under 15 USCA § 96, depends on whether the resemblance is such as to be likely to deceive ordinary purchasers buying under the usual conditions prevailing in the trade and giving such attention as such purchasers usually give in buying that class of goods.

5. Trade-marks and trade-names and unfair competition ⊚⟶59(5)—Defendant's label on dresses in which word "Queen" dominated held to infringe plaintiff's trade-mark "Queen Make," though otherwise dissimilar (15 USCA § 96).

Words "Queen Brand," in labels on defendant's dresses, held so deceptively similar to plaintiff's registered mark "Queen Make" as to constitute infringement thereof under 15 USCA § 96, where public had come to know and designate plaintiff's products as "Queen" dresses and aprons, though marks were otherwise dissimilar.

**6. Trade-marks and trade-names and unfair competition ⬤⟿55—Plaintiff, suing for infringement of registered trade-mark, need not show defendant's wrongful intent or facts justifying inference of such intent (15 USCA § 96).**

In suit for infringement of a registered trade-mark under 15 USCA § 96, it is not necessary, in order to establish infringement, to show wrongful intent in fact on the part of the defendant or facts justifying the inference of such an intent.

**7. Trade-marks and trade-names and unfair competition ⬤⟿68(1)—"Unfair competition" consists in palming off one's goods as goods of another.**

"Unfair competition" ordinarily consists in the simulation by one person, for the purpose of deceiving the public, of the names, symbols, labels, or devices employed by a business rival, in order to induce purchasing public to buy his products in the belief that they are those of his rival.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Unfair Competition.]

**8. Trade-marks and trade-names and unfair competition ⬤⟿69—Fraudulent intent is a necessary ingredient of unfair competition.**

Fraudulent intent is a necessary ingredient of unfair competition.

**9. Trade-marks and trade-names and unfair competition ⬤⟿93(1)—Fraudulent intent will be presumed, where defendant has refused to cease using mark on label which will probably deceive public.**

Where defendant has refused on notice to cease the use of mark or label, the natural and probable result of which would be to deceive the public and palm off defendant's goods as those of plaintiff, fraudulent intent will be presumed.

**10. Trade-marks and trade-names and unfair competition ⬤⟿75—Proof of actual deception is not necessary to show unfair competition, but it is sufficient that deception will probably result.**

To make out a case of unfair competition, it is not necessary to show that any particular person has been actually deceived by defendant's conduct and let to purchase his goods in the belief that they are the goods of the plaintiff, but it is sufficient to show that such deception will be the natural and probable result of defendant's acts.

**11. Trade-marks and trade-names and unfair competition ⬤⟿70(3)—Trade-name associated by public with certain goods will be protected against imitation.**

Where a trader has adopted a trade-name, and such trade-name has come to be understood by the buying public as indicating the goods of such trader, such trade-name will be protected against use or imitation.

**12. Trade-marks and trade-names and unfair competition ⬤⟿70(3)—Defendant's use of word "Queen" on aprons and dresses held to constitute unfair competition as respects plaintiff using same word on similar product.**

Where word "Queen" was dominating word in plaintiff's trade-mark and labels on cotton bungalow aprons, dresses, and similar products, and goods are called for by name "Queen" dresses or "Queen" aprons, use of such word by defendant in marking similar goods manufactured and sold by it will be presumed fraudulent and to constitute unfair competition.

Appeal from the District Court of the United States for the Eastern District of Missouri; Charles B. Davis, Judge.

Suit by Isaac Ginsberg & Bros., Inc., against the Queen Manufacturing Company. Decree for plaintiff, and defendant appeals. Affirmed.

Harry N. Soffer, of St. Louis, Mo. (Joseph Boxerman, of St. Louis, Mo., on the brief), for appellant.

Andrew B. Remick, of St. Louis, Mo. (Charles E. Francis, of New York City, on the brief), for appellee.

Before STONE and VAN VALKENBURGH, Circuit Judges, and PHILLIPS, District Judge.

PHILLIPS, District Judge. This is an appeal from a decree in favor of Isaac Ginsberg & Bros., Inc. (hereinafter called plaintiff), in a suit brought against Queen Manufacturing Company (hereinafter called defendant) for infringement of plaintiff's trade-mark "Queen Make," and for unfair competition in the use of the trade name "Queen."

The plaintiff is a New York corporation engaged in the manufacture and sales of women's, misses,' and children's cotton bungalow aprons, dresses, skirts, and waists. It attaches to all such garments the trade-mark:

This trade-mark was registered in the United States Patent Office July 25, 1922, by the firm of Isaac Ginsberg & Bros., the predecessor of plaintiff, for women's cotton aprons and dresses. Plaintiff and its predecessor have used the mark since 1903. The plaintiff was incorporated January 2, 1923. It succeeded to and took over the assets and good will of the firm of Isaac Ginsberg & Bros., including the trade-mark.

The sales of plaintiff and its predecessor, of women's cotton dresses and aprons bearing the trade-mark "Queen Make," from July 31, 1914, until July 31, 1926, aggregated $15,243,739. These sales were made in practically every state in the Union, including

Missouri. Plaintiff and its predecessor, from the year 1914 until July 21, 1926, expended for advertising "Queen Make" dresses and aprons in such nationally known magazines as the Ladies' Home Journal, Good Housekeeping, and Vogue, the amount of $349,502.

The defendant is also engaged in the manufacture and sale of similar cotton garments. It attaches thereto the following label or mark:

Queen Mfg. Co., Inc.

"QUEEN BRAND"

Fit for a Queen

No. .9..2.8...

Size... ...... .2.

St. Louis, Mo.

It also prints on its statement blanks or billheads the following:

plaintiff; that most of her customers ordered the dresses by the single name "Queen"; and that they usually spoke of them as "Queen" dresses. The defendant introduced no evidence in the trial below.

The trial court found that the defendant was guilty of infringement, and enjoined the defendant from using "Queen Brand" as a trade-mark on its women's aprons, dresses, skirts, and waists and the use of the word "Queen" as a name or part of a name for its product, or in its corporate name.

Counsel for defendant, in their brief, set forth the following as controlling propositions of law:

"I.

"Before a court of equity will give relief in a trade-mark infringement case, the similarity of labels must be of such a nature as to deceive purchasers exercising ordinary care when examining to ascertain the source of its manufacture."

# QUEEN MANUFACTURING CO., INC.
## 1312 WASHINGTON AVENUE
### MANUFACTURERS OF

Invoice No.

"BETTER GRADE"   "QUEEN BRAND"   "BETTER MADE"

FIT FOR A QUEEN

Bungalow Aprons, House Dresses, Etc.

Within a year prior to March 17, 1926, the date this suit was instituted, the plaintiff received information through one of its representatives that the defendant was manufacturing such cotton garments, and attaching thereto the mark "Queen Brand." Upon receiving this information, the plaintiff sent to the defendant two letters requesting it to desist from the use of the mark "Queen Brand," and claiming it was an infringement of plaintiff's trade-mark. One letter of remonstrance was sent on August 19, 1925, and the other on September 30, 1925. The defendant made no reply to these letters, and continued to use the alleged infringing mark.

Mrs. Habig, an employee of Scruggs-Vandervoort-Barney Dry Goods Company, which operates one of the large department stores of St. Louis, testified that she had been in employ of the dry goods company for twenty-seven years; that she was the buyer and manager of the women's dress department; that the dry goods company had sold during the past twelve years large quantities of "Queen Make" dresses made by the

"II.

"Unless there is a passing off of the goods of one manufacturer for the goods of another, or the probability of it, there is no unfair competition."

"III.

"In cases of unfair competition, the burden of proof is upon complainant to show that purchasers have been deceived."

Predicating their argument upon the foregoing legal propositions, they contend the evidence is insufficient to support the decree.

Section 96 of title 15, U. S. C. (15 USCA § 96), in part, reads as follows:

"Any person who shall, without the consent of the owner thereof, reproduce, counterfeit, copy, or colorably imitate any such trade-mark and affix the same to merchandise of substantially the same descriptive properties as those set forth in the registration, or to labels, signs, prints, * * * intended to be used upon or in connection with the sale of merchandise of substantially the same descriptive properties as those set forth

in such registration, and shall use, or shall have used, such reproduction, counterfeit, copy, or colorable imitation in commerce among the several states, or with a foreign nation, or with the Indian tribes, shall be liable to an action for damages therefor at the suit of the owner thereof."

[1-3] In order to constitute an infringement, it is not necessary that the trade-mark be literally copied. Northam Warren Corporation v. Universal Cosmetic Co. (C. C. A. 7) 18 F.(2d) 774; Stark v. Stark Bros. Nurseries & Orchards Co. (C. C. A. 8) 257 F. 9, 12; McLean v. Fleming, 96 U. S. 245, 251, 24 L. Ed. 828; Stephano Bros. v. Stamatopoulos (C. C. A. 2) 238 F. 89, 94. Neither is it necessary that every word be appropriated. There may be infringement where the substantial and distinctive part of the trade-mark is copied or imitated. 38 Cyc. 744; Rosenblum v. Rosenblum (D. C. N. Y.) 253 F. 863; Jacoway v. Young (C. C. A. 8) 228 F. 630, 633; Omo Mfg. Co. v. Mystic Rubber Co. (D. C. Mass.) 225 F. 92; Johnson & Johnson v. Bauer & Black (C. C. A. 7) 82 F. 662, 663; De Voe Snuff Co. v. Wolff (C. C. A. 6) 206 F. 420, 423; Thomas G. Plant Co. v. May Co. (C. C. A. 6) 105 F. 375, 379. Dissimilarity in size, form, and color of the label and place where it is applied are not conclusive against infringement. Eagle White Lead Co. v. Pflugh (C. C.) 180 F. 579, 583. The resemblances may so far dominate the differences as to be likely to deceive ordinary purchasers. O. & W. Thum Co. v. Dickinson (C. C. A. 6) 245 F. 609, 613. Where a trade-mark contains a dominating or distinguishing word such as the word "Queen" in the instant case, and where the purchasing public has come to know and designate the article by such dominating word, the use of such word by another in marking similar goods may constitute infringement, although the latter mark, aside from such dominating word, may be dissimilar.

[4] In determining whether an alleged infringing trade-mark is sufficiently similar to be deceptive, and therefore an infringement, ordinary purchasers, buying under the usual conditions prevailing in the trade, and giving such attention as such purchasers usually give in buying that class of goods, are the standard. Whether an imitation which is not an exact copy constitutes an infringement depends upon whether the resemblance is such as to be likely to deceive purchasers of the standard above defined and cause them to believe in purchasing the goods of the defendant that they are the goods of the plaintiff. In other words, if the resemblance is such as would deceive ordinary purchasers of the goods using ordinary caution, the trade-mark is infringed. McLean v. Fleming, supra; Ansehl v. Williams (C. C. A. 8) 267 F. 9, 15; Ward Baking Co. v. Potter-Wrightington, Inc. (C. C. A. 1) 298 F. 398, 401; Stark v. Stark Bros. N. & O. Co., supra. In the final analysis, it is by the application of this test to the particular facts of each individual case that the question of infringement must be determined.

[5] There is no doubt under the evidence in the instant case that the word "Queen" is the dominating word and distinguishing feature of plaintiff's trade-mark, and that the public has come to know plaintiff's products as "Queen" dresses and aprons. While it is true there is dissimilarity in the two marks in a number of minor details, the dominating or distinguishing word is the same in both. Such being the facts, we think the label or mark employed by the defendant would likely deceive ordinary purchasers of such goods using ordinary caution.

[6] In a suit for the infringement of a registered trade-mark, it is not necessary for the complainant, in order to establish infringement, to show wrongful intent in fact on the part of the defendant, or facts justifying the inference of such an intent. Thaddeus Davids Co. v. Davids Mfg. Co., 233 U. S. 461, 471, 34 S. Ct. 648, 58 L. Ed. 1046, Ann. Cas. 1915B, 322; Coty, Inc., v. Parfums de Grande Luxe, Inc. (C. C. A. 2) 298 F. 865, 869; Autoline Oil Co. v. Indian Refining Co. (D. C. Md.) 3 F.(2d) 457, 462; Capewell Horse Nail Co. v. Green (C. C. A. 2) 188 F. 20, 24.

We are of the opinion that the trial court properly held that the defendant's label infringed the trade-mark of the plaintiff.

[7] Unfair competition ordinarily consists in the simulation by one person, for the purpose of deceiving the public, of the names, symbols, labels, or devices employed by a business rival, in order to induce the purchasing public to buy the goods or wares of the former in the belief that they are the goods or wares of the latter. It consists in palming off one person's goods as the goods of another. A. Leschen & Sons Rope Co. v. Fuller (C. C. A. 8) 218 F. 786, 789; O. & W. Thum Co. v. Dickinson (C. C. A. 6) 245 F. 609, 621; Charles Broadway Rouss, Inc., v. Winchester Co. (C. C. A. 2) 300 F. 706, 723; Howe Scale Co. v. Wyckoff, Seamans & Benedict, 198 U. S. 118, 140, 25 S. Ct. 609, 49 L. Ed. 972; Peters Milling Co. v. International Sugar Feed No. 2 Co. (C. C. A. 6) 262 F. 336, 340.

In Rope Co. v. Fuller, supra, the court said:

"The sale of goods by one manufacturer or vendor as those of another is unfair competition, and it constitutes a fraud which a court of equity may lawfully prevent by injunction. The fraud is the basis of the suit for such relief. The deceit, or the probable deceit, of the ordinary purchaser, so that he buys, or probably will buy, the articles of one manufacturer or vendor in the belief that they are those of another, is an indispensable attribute of good cause for such a suit. The test of the existence of this attribute is whether the simulation of the other manufacturer's or vendor's goods will probably deceive a purchaser who exercises ordinary prudence, and the burden is on the plaintiff to prove the fraud by a substantial preponderance of the evidence."

[8, 9] Fraudulent intent is a necessary ingredient of unfair competition. Elgin Nat. Watch Co. v. Illinois Watch Case Co., 179 U. S. 665, 674, 21 S. Ct. 270, 45 L. Ed. 365; Lawrence Mfg. Co. v. Tennessee Mfg. Co., 138 U. S. 537, 549, 11 S. Ct. 396, 34 L. Ed. 997; National Picture Theatres, Inc., v. Foundation Film Corp. (C. C. A. 2) 266 F. 208, 211. In Thum Co. v. Dickinson, supra, the court said: "The essence of unfair competition consists in palming off, either directly or indirectly, one person's goods as the goods of another, and this, of course, involves an intent to deceive." Where, however, the defendant has refused on notice to cease the use of a mark or a label, the natural and probable result of which will be to deceive the public, and palm off the goods of the defendant as the goods of the plaintiff, fraudulent intent will be presumed. Feil v. American Serum Co. (C. C. A. 8) 16 F.(2d) 88, 90; Thum Co. v. Dickinson, supra; 26 R. C. L. p. 884, Sec. 60.

[10] In order to make out a case of unfair competition, it is not necessary to show, as contended for by counsel for defendant, that any particular person has been actually deceived by defendant's conduct and led to purchase his goods in the belief that they are the goods of the plaintiff. It is sufficient to show that such deception will be the natural and probable result of the defendant's acts. Charles Broadway Rouss, Inc., v. Winchester Co., supra; Rice & Hutchins, Inc., v. Vera Shoe Co., Inc. (C. C. A. 2) 290 F. 124, 126; 33 Cyc. 773.

[11, 12] Where a trader has adopted a trade-name, and where such trade-name has come to be understood by the buying public as indicating the goods of such trader, such a trade-name will be protected against use or imitation upon the ground of unfair competition. Juvenile Shoe Co., Inc., v. Federal Trade Commission (C. C. A. 9) 289 F. 57; 38 Cyc. 765. The plaintiff has employed the word "Queen" in the marking of its products. The word "Queen" on cotton bungalow aprons, dresses, and the like, indicates to the buying public plaintiff's products. The evidence shows that in buying these products they call for "Queen" dresses or "Queen" aprons. We think, in view of these facts, the use of the word "Queen" by the defendant in marking similar goods manufactured and sold by it would probably result in deceiving ordinary purchasers using ordinary caution into believing that they were plaintiff's products. Defendant continued such use after notice from the plaintiff, and from such continued use fraudulent intent will be presumed.

We therefore conclude that the plaintiff made out a case of unfair competition. It follows that the decree appealed from was right and it should be affirmed.