### LOU SCHNEIDER, Inc. v. CARL GUT-MAN & CO. et al.

Civ. No. 27–496.

District Court, S. D. New York.

July 2, 1946.

Irving Frederick Goodfriend, of New York City, for plaintiff.

Jack Pearl, of New York City, for defendants.

BRIGHT, District Judge.

Plaintiff is the owner of trademark 235,-880, registered November 29, 1927, by Schneider & Miller, Inc., for the words "Hoot Lass" Bonnie for ladies' coats, in Class 39, Clothing, the mark to be affixed to the goods by placing thereon a label. Plaintiff is the successor in title to the business of Schneider & Miller, Inc. and to the trademark.

Claiming an infringement of the trademark, and unfair competition in the use by defendants of the words "Bonnie Lassie" and a design, colorably imitating the trademark and design used by plaintiff therewith, it brings this action for an injunction, accounting and damages.

Defendants contend that the action is founded solely on the trademark; that plaintiff's design, consisting of the figure of a Scotch dancing girl in a diamond shaped enclosure, was never registered; that defendants' mark "Bonnie Lassie" (not registered) is not a simulation or copy of plaintiff's; that similar words, such as Bonnie Laddie, Bonnie Lassie, and Lassie, have been used as trademarks for over 35 years for similar goods; and, therefore, the protection of plaintiff's trademark must be limited strictly to ladies' coats and suits; that defendants are not engaged in a competitive business, and the products manufactured by them are not sold or displayed with plaintiff's; and that plaintiff has failed to establish that defendants are engaged in interstate commerce. (In making this last contention, however, defendants have overlooked the testimony given by Herman Rottenberg, one of the copartnership, that their merchandise is sold throughout the country, and to chain and department stores, and mail order houses.)

Plaintiff is engaged in the manufacture and sale of ladies' and young misses' coats and suits, and has been so engaged since 1929. Defendant, since 1941, has manufactured and sold sweaters, women's knitwear, ladies', juniors', misses' and children's polo shirts, blouses, bedjackets and suits.

Plaintiff, on the dissolution of Schneider & Miller, Inc., in 1929, acquired their trademark "Hoot Lass" Bonnie and have since been using it on labels attached to ladies' and misses' coats and suits.

In 1933, plaintiff began to use labels on its product which had on them the design of a Scotch dancing girl in a diamond shaped enclosure, on the top two sides of which were the trademark words "Hoot Lass" Bonnie. On February 27, 1934, it registered as a trademark for ladies' coats a label containing the words "Del-Ray" and in the upper left corner was printed the diamond design and words mentioned. The statement specifies that the trademark had been continuously used in the applicant's business since July 14, 1931. Other labels, having on them the same diamond shaped design with the Scotch dancing girl enclosed and the trademark words "Hoot Lass" Bonnie, were registered as trademarks by the plaintiff, one for the words "Llamadown" on February 27, 1934, stated to have been used since May, 1932; another for the words "Lassie Tweed" on March 13, 1934, stated to have been used since July 14, 1931; and another for "Lustre Wave" on May 25, 1937, stated to have been used since December 15, 1936.

In addition to the foregoing other labels, containing the diamond design with "Hoot Lass" Bonnie as mentioned, were used by plaintiff upon coats and sportwear, in connection with "Reflectone" (registered November 9, 1937, and used from 1937 on), "Shag-Rilla" (registered November 23, 1937, and used from 1937 on), and "Bonnie-brooke" (registered September 17, 1940, and used from 1940 on).

Other labels, containing the diamond design and trademark words, were used with other unregistered names to designate plaintiff's product, from 1940 on. So that it is fair to find that, in addition to the trademark "Hoot Lass" Bonnie, plaintiff had adopted and used as its house mark the design of the Scotch dancing girl in the diamond shaped enclosure with the words "Hoot Lass" Bonnie from at least 1933 on, and probably from July 14, 1931.

Its product was advertised nation wide in periodicals and trade papers used by manufacturers and buyers of ladies' ready-to-wear apparel, such as Women's Wear, Vogue, Harper's Bazaar, Mademoiselle, Seventeen, Glamour, Charm, Photoplay, as well as in the Nugent and Fairchild trade directories, for which advertising it had spent sums ranging from $3,458 in 1932 to $73,643 in 1945, and which advertising carried the design of the Scotch dancing girl and the trademark words. Sales of its product were made in retail specialty shops, department stores and other stores throughout the country where ladies' and misses' apparel, coats and suits were sold.

Defendants first adopted the design of the Scotch dancing girl on its labels in 1941, and has been using it down to the trial along with the words "Bonnie Lassie", which latter had been used by them since 1940. Neither the design nor the words have been registered by them. Two labels, used by the defendants on ladies' sweaters

manufactured and sold by them, were offered in evidence by plaintiff, each of which had on it the picture of a Scotch dancing girl; one of them (Exhibit 24) in conjunction with the words "A Bonnie Lassie Sweater, 100% Virgin Wool, Carl Gutman & Co.", and the other (Exhibit 25) accompanied by the words "A Bonnie Lassie Sweater".

Defendants conceded that they had used facsimiles of these labels on their product, and had advertised such facsimiles in American Fashion, Women's Wear, Seventeen, Glamour, Charm, Harper's, and in Nugent's directory.

Plaintiff exhibited its "Hoot Lass" Bonnie goods at the American Fashion show in Dallas in October, 1945. It advertised in American Fashion published by that show, and those who did so advertise were required to exhibit at the show. Plaintiff's ad had the design of the Scotch dancing girl in the diamond with the trademark words. In the same publication appeared defendants' advertisement of "Bonnie Lassie" creations, women's knitwear, sweaters, ladies' and misses' polo shirts, blouses, bedjackets, shoulderettes, and children's polo shirts, suits, creepers and panties.

There was proof that the International Shoe Company had registered "Bonnie Laddie" for shoes in 1924, and also had claimed "Bonnie Lassie" to designate girls' shoes a long time ago. Borkin & Levine, Inc. had claimed and used the trademark "Lassie Junior" on ladies' coats since 1936. Bird Knitting Mills Company on December 5, 1916, registered "Bonnie Lassie" for use on hosiery, but there was no evidence of its use in the last 14 years. "Lassie" was registered on November 10, 1925, by N. P. & J. Trabulski for mufflers and scarves of woven material. On June 13, 1938, "Lassie" was registered by Continental Undergarment, Inc. for women's, misses' and children's undergarments, panties, bloomers, step-ins, chemises, slips, shirts, vests and sweaters, and that company had used it since October, 1938. Luxuray, Inc., on February 24, 1942, registered "Bonnie Lassie Doveskins" for a plaid print for ladies' and misses' slips, petticoats, bloomers, and other underwear, and had used it since September 1, 1939. It sold the name to one of the defendants in 1941, and it had been applied by defendants to cotton and rayon underwear since then.

Defendants sold their product throughout the country to mail order houses, department stores, chain stores and other shops; but it was claimed by them that coats and sweaters are not sold at the same counters nor displayed in the same way.

On November 5, 1943, when it discovered the use by defendants of the Scotch dancing girl design and the words "Bonnie Lassie", plaintiff notified defendants that their use of "Bonnie Lassie" in connection with the sale of clothing, such as sweaters, was an unlicensed infringement of its trademarks; notified them to desist; and demanded an accounting and damages. Defendants replied on November 15, 1943, that it was their contention that "Bonnie Lassie" as used in their business did not infringe "Hoot Lass" Bonnie; furthermore, that their business was entirely different from plaintiff's, and that the words "Lassie", "Lass", "Bonnie" and "Bonny" separately and in conjunction, have been in use prior to their adoption by plaintiff which could not claim the exclusive right thereto.

I find that defendants' use of "Bonnie Lassie" is an infringement of plaintiff's trademark "Hoot Lass" Bonnie, and that defendants by their use of the words and of the design of the Scotch dancing girl in conjunction with them have unfairly competed, notwithstanding plaintiff's mark and design have heretofore been used on ladies' and misses' coats and suits, and defendants' on sweaters.

The trademark "Hoot Lass" Bonnie is not descriptive of anything with which it is used, but is, in my judgment, both a distinctive and arbitrary mark. It is not descriptive of the characteristics of the goods, or of their quality or ingredients. It is a fanciful name, obviously adopted without any other thought than as being peculiarly significant and suggestive of plaintiff's goods. The very arrangement of the words, backward, it seems to me, shows this. Hamilton-Brown Shoe Co. v. Wolf Brothers, 240 U.S. 251, 256, 36 S.Ct. 269, 60 L.Ed. 629; Standard

Brands v. Smidler, 2 Cir., 151 F.2d 34–36; France Milling Co. v. Washburn-Crosby Co., 2 Cir., 7 F.2d 304–306. It is not necessary to constitute an infringement that every word of a trademark should be appropriated. It is sufficient that enough be taken to deceive the public. Saxlehner v. Eisner & Mendelson Co., 179 U.S. 19–33, 21 S.Ct. 7, 45 L.Ed. 60; Stephano Bros. v. Stamatopoulos, 2 Cir., 238 F. 89–94, L.R.A.1917C, 1157; Queen Mfg. Co. v. Isaac Ginsberg & Bros., 8 Cir., 25 F.2d 284–287. The last cited case, and many others, are authority for the principle that it is not necessary to show wrongful intent, or that the public has been deceived. If the resemblance is such as would deceive ordinary purchasers using ordinary caution, the mark is infringed. Particularly would this be so where, as here, defendant has refused, on notice, to desist its use of the offending label and where it continues the use of the words in conjunction with a similar design. Fraudulent intent will be presumed.

■ "Hoot Lass" Bonnie, being a valid trademark, its infringement by "Bonnie Lassie" must result from the use of the latter upon goods of substantially the same descriptive properties. 15 W.B.C. §§ 85, 96. But whether the goods are of the same "descriptive properties" depends upon whether they are so related as to fall within the mischief which equity would prevent, or, as might naturally be supposed, to come from the owner of the trademark, or near enough alike to confuse its customers, and are not too foreign to the trademarked goods. Here the two classes of goods are worn by the same people, are sold in the same stores, advertised in the same publications, and sold to the same class of purchasers. Clearly, there is obvious possibility of confusion. They are also included in the same classification by the Patent Office. Aunt Jemima Mills Co. v. Rigney & Co., 2 Cir., 247 F. 407–410, L.R.A.1918C, 1039,

certiorari denied 245 U.S. 672, 38 S.Ct. 222, 62 L.Ed. 540; Pease v. Scott County Milling Co., D.C., 5 F.2d 524, 525; Rosenberg Bros. v. Elliott, 3 Cir., 7 F.2d 962, 963; L. E. Waterman Co. v. Gordon, 2 Cir., 72 F.2d 272, 273; Landers, Frary & Clark v. Universal Cooler Corp., 2 Cir., 85 F.2d 46–48; S. C. Johnson & Son v. Johnson, 2 Cir., 116 F.2d 427–429; Standard Brands v. Smidler, 2 Cir., 151 F.2d 34–37.

The case of Co-Ed Originals v. Mutual Garment Co., D.C., 58 F.Supp. 17, is not to the contrary. There the mark was held to be descriptive and to be capable of protection only when used on ladies' dresses, and not when used upon related goods. That case also decided that there was no similarity between the two marks.

■ The same principles would seem applicable to plaintiff's claim of unfair competition. Yale Electric Corp. v. Robertson, 2 Cir., 26 F.2d 972–974; Emerson Electric Mfg. Co. v. Emerson Radio & Phonograph Corp., 2 Cir., 105 F.2d 908; Standard Brands v. Smidler, 2 Cir., 151 F.2d 34–37. Here defendant, not content with the use of "Bonnie Lassie" also adopted the Scotch dancing girl as a mark. Why, out of all the many other designs it could have appropriated, it saw fit to use this one is inexplicable on any other theory than that it saw some advantage accruing to it from the publicity of plaintiff's wares. The same result should follow on this branch of the case as on the infringement claim.

It follows that plaintiff is entitled to an injunction and accounting as prayed for, with costs. I can see no evidence of damage from the infringement of the trademark.

Findings and conclusions may be prepared by plaintiff's attorney and served upon counsel for the defendant who may have 10 days in which to submit objections. The court will thereafter make and file those required by the rules.