**PROXITE PRODUCTS, INC., Plaintiff,**

v.

**BONNIE BRITE PRODUCTS CORP. and Axelrod & Kupetz, Defendants, and Bonnie-Lan, Inc., Joseph Schaevitz, Jack Schaevitz and Louis S. Fischer, Additional Defendants on Counterclaim.**

United States District Court
S. D. New York.
June 29, 1962.

512

Amster & Levy, New York City, for plaintiff, Morton Amster, Jesse Rothstein and Stanley H. Lowell, New York City, of counsel.

Blum, Moscovitz, Friedman & Blum, New York City, for defendants, Richard W. Blum, Solomon Weinstein and Martin J. Beran, New York City, of counsel.

BONSAL, District Judge.

Plaintiff, Proxite Products, Inc., alleges infringement of its registered

trademarks PROX BONNIE BLUE and BONNIE by the defendants' use of the trademark BONNIE BRITE. Jurisdiction is claimed under 28 U.S.C. § 1338. Defendants have counterclaimed, under 28 U.S.C. § 1338(b), alleging unfair competition; specifically that the plaintiff has copied defendants' labels.

Plaintiff and the corporate defendant are both New York corporations. Plaintiff and its predecessors have engaged in the manufacture and sale of household products since 1933. Defendant partnership, Axelrod & Kupetz, is the sole distributor of the BONNIE BRITE products manufactured by the corporate defendant Bonnie Brite Products Corporation, of which Axelrod & Kupetz individually are the sole stockholders. Defendants' products include various kinds of household floor waxes and cleaners. The additional individual defendants under the counterclaim, Joseph Schaevitz, Jack Schaevitz and Louis S. Fischer, are the sole stockholders of the plaintiff.

Plaintiff and defendants sell their products for the most part within the New York metropolitan area. The products are retailed in food chain stores, independent groceries and hardware stores. Plaintiff's products are sold in several other states, Puerto Rico, Bermuda and Newfoundland; defendants' products are also sold in several other states.

The plaintiff and its predecessors' first use of BONNIE was in 1938–1939 on a laundry bluing called BONNIE BLUE. In 1949 plaintiff added the prefix PROX to its bluing and for three years sold it as PROX BONNIE BLUE. On July 29, 1952 plaintiff registered its mark PROX BONNIE BLUE, Registration No. 562,-280, for laundry bluing, disclaiming any trademark significance for the word "Blue". In the same year, plaintiff dropped PROX, and has until the present sold its bluing as BONNIE Blue.

In April 1953 the plaintiff brought out BONNIE Silver Dip, a silver cleaner. This was discontinued in May 1954. In April 1954 plaintiff introduced BONNIE Pine Odor Disinfectant. The sales of this product ceased in early 1956.

In April and May of 1954 the defendants introduced BONNIE BRITE Floor Wax through an advertising campaign in the New York metropolitan area, and in June 1954 commenced sales to the public. Plaintiff promptly notified the defendants of alleged infringement of its trademark BONNIE by a letter dated June 15, 1954.

On January 18, 1955 the defendant corporation registered its mark BONNIE BRITE for Floor Wax, Registration No. 600,872.

At the time of the defendants' introduction of BONNIE BRITE Floor Wax, the plaintiff had three products on the market which bore the mark BONNIE: BONNIE Blue, BONNIE Silver Dip and BONNIE Pine Odor Disinfectant.

The Plaintiff continued to bring out BONNIE products adding BONNIE Bleach, Ammonia, Starch, Fluff and Pine Detergent Ammonia to its line. On January 29, 1957 plaintiff obtained Registration No. 640,544 for BONNIE for bleach, ammonia, plastic starch and disinfectant in Class 6. On May 2, 1959 plaintiff registered BONNIE (Registration No. 678,630) in Class 52, cleaning preparations for metals.

During this same period defendants expanded their line of BONNIE BRITE products, adding glass polish, paste wax, instant floor cleaner and silver polish.

At the outset will be considered defendants' allegation that the Court lacks jurisdiction on the ground that the plaintiff has abandoned its mark, PROX BONNIE BLUE (Registration No. 562,-280). Defendants' claim is based on the fact that the plaintiff, in 1952, dropped the word PROX from its registered trademark, PROX BONNIE BLUE, which trademark was plaintiff's only registration prior to the defendants' first use and registration of BONNIE BRITE.

Plaintiff answers defendants' contention by showing that the plaintiff is the result of a merger entered into in 1947 between Proxite Products, Inc. and another corporation. The earlier Proxite Products, Inc. had used the mark PROX

on several of its products but had always used BONNIE BLUE on its laundry bluing. Following the merger, and perhaps to identify the origin of the bluing with the previous corporation, plaintiff added the word PROX to BONNIE BLUE, but a few years later returned to its original mark BONNIE BLUE.

■■ The Plaintiff and its predecessors have consistently used the mark BONNIE BLUE or BONNIE since 1938, and there thus appears to be a continuous intent to have the mark BONNIE identify its goods. Abandonment will not usually be inferred in the absence of intent to abandon. 15 U.S.C.A. § 1127; Baglin v. Cusenier Co., 221 U.S. 580, 598, 31 S.Ct. 669, 55 L.Ed. 863 (1911). Thus the dropping of the word PROX under these circumstances did not work an abandonment of plaintiff's trademark.

■ However, even if an abandonment of the registered trademark were found, the plaintiff's use of BONNIE over such an extended period of time created certain common law rights in its favor. These rights may be sufficient to give the plaintiff an interest in BONNIE protectable under the common law of unfair competition. Thus, the plaintiff having already stated a substantial federal claim under the Lanham Act, the court may retain jurisdiction to determine the related claim based upon plaintiff's common law rights. Consequently, under this doctrine of pendant jurisdiction the court would have jurisdiction, even if there were an abandonment of the plaintiff's registered mark, which is not found here. Hurn v. Oursler, 289 U.S. 238, 53 S.Ct. 586, 77 L.Ed. 1148 (1933); Schreyer v. Casco Products Corp., 190 F.2d 921 (2d Cir., 1951), cert. denied, 342 U.S. 913, 72 S.Ct. 360, 96 L.Ed. 683 (1952); Chester Barrie, Ltd. v. Chester Laurie, Ltd., 189 F.Supp. 98, 99 (S.D.N.Y.1960). The purpose of such a procedure is to avoid piecemeal litigation. Maternally Yours, Inc. v. Your Maternity Shop, Inc., 234 F.2d 538, 543 (2d Cir., 1956).

The issue to be decided is whether such rights as plaintiff may have acquired by its use of BONNIE are sufficient to bar the defendants' use of BONNIE BRITE on their products.

■■ Registration of a trademark is not essential to the acquisition of a protectable interest in the mark, and registration of a mark under the Lanham Act does not of itself create trademark rights. It is the priority of use in commerce on the owner's goods as a designation of origin which gives the owner the right to a mark. 1 Nims, Unfair Competition and Trade-Marks §§ 199(a), 214 (4th ed. 1947). The exclusive right to the use of a trademark has always rested and still rests on the common law. Trade-Mark Cases, 100 U.S. 82, 25 L.Ed. 550 (1879); 1 Nims, supra, § 185.

■ A distinction is drawn between two broad categories of marks. In the first category, sometimes referred to as "technical trademarks", are those designations which are fanciful or arbitrary in their application. In the second category fall those designations, quite often common words, which are descriptive or suggestive of the product.

The designation which is a true technical mark receives protection as soon as it is used in marketing the article. It is the priority of user alone that controls. Columbia Mill Co. v. Alcorn, 150 U.S. 460, 14 S.Ct. 151, 37 L.Ed. 1144 (1893); Waldes v. International Mfrs. Agency, 237 F. 502, 505 (S.D.N.Y.1916); 1 Nims, supra, § 214(a).

■ Since the primary function of a trademark is to identify the origin of the goods, not their nature, a merely descriptive or suggestive designation cannot become a trademark. No protection will be afforded a designation "if it is likely to be regarded by prospective purchasers as a common name or generic name for such goods or as descriptive of them or of their ingredients, quality, properties, functions or uses." 3 Restatement, Torts § 721 (1938). Therefore, a word in the public domain cannot by itself serve as a trademark. However, such designation will be protected if it has acquired a special significance

in the public mind known as secondary meaning. General Shoe Corp. v. Rosen, 111 F.2d 95 (4th Cir., 1940); G. & C. Merriam Co. v. Saalfield, 198 F. 369 (6th Cir., 1912), aff'd, 241 U.S. 22, 36 S.Ct. 477, 60 L.Ed. 868 (1916).

This distinction between technical trademarks and descriptive or suggestive marks has led to their classification running from strong to weak, and the marks are given varying degrees of protection accordingly. A strong mark is given wide protection even upon completely unrelated products. A weak mark which is suggestive of the qualities of the product, or is generally laudatory, is given a relatively narrow range of protection.

The rationale behind classification as a weak mark is that one who chooses such a mark needs protection against use of his mark only on closely related goods; the public, accustomed to frequent use of the mark, would not be likely to attribute different goods bearing the mark to a single source. See Arrow Distilleries, Inc. v. Globe Brewing Co., 117 F.2d 347 (4th Cir., 1941). Others will have an interest in using the word as a mark for their own goods. The fear of granting a trade monopoly in common words has resulted in courts tolerating a certain amount of public confusion when the weak mark is used on different goods, while preventing the same amount of confusion when the strong mark is used on even less closely related goods. Cf. Sunbeam Lighting Co. v. Sunbeam Corp., 183 F.2d 969 (9th Cir., 1950), cert. denied 340 U.S. 920, 71 S.Ct. 357, 95 L.Ed. 665 (1951).

However, a pitfall to be avoided by this classification into strong and weak marks is that it may tend to obsure the basic question of likelihood of confusion of origin. Whether a mark is strong or weak should only be evidence of such likelihood, along with such factors as similarity of the two products, resemblance of the two marks, whether the products are marketed through the same channels, and the degree of attention exercised by the purchaser of such goods. 3 Restatement, Torts § 731 (1938).

Thus in the final analysis a court must balance the equities between the trademark owner's proprietary interest and the public interest in not depleting the general vocabulary available to all for description and denomination of articles of commerce. See Telechron, Inc. v. Telicon Corp., 198 F.2d 903, 906 (3d Cir., 1952).

The designation BONNIE is a weak mark. Its primary connotation is descriptive of appearance or suggestive of quality. It is quite true that the proprietary connotation or secondary meaning of a mark such as BONNIE is harder to create and easier to lose. Consequently, a secondary meaning, if any, for BONNIE will not be extended as far as would be the case if an arbitrary or fanciful word had been used. The scope of the secondary meaning is to be judged on the individual facts of each case. If the plaintiff here can show that the scope does extend to related goods, there is no reason why its interest should not be recognized and protected. Landers, Frary & Clark v. Universal Cooler Corp., 85 F.2d 46, 48 (2d Cir., 1936).

In Lou Schneider, Inc. v. Carl Gutman & Co., 69 F.Supp. 392 (S.D.N.Y.1946) "Hoot Lass Bonnie" on ladies' coats was found infringed by "Bonnie Lassie" on ladies' sweaters. The court stated that, "It is not necessary to constitute an infringement that every word of a trademark should be appropriated. It is sufficient that enough be taken to deceive the public. * * * If the resemblance is such as would deceive ordinary purchasers using ordinary caution, the mark is infringed." Lou Schneider, supra, at 395; Queen Mfg. Co. v. Isaac Ginsberg & Bros., 25 F.2d 284 (8th Cir., 1928).

Although the mark "Admiral" is a common word and a weak mark, its use on electric ranges and refrigerators was held infringed by use on electric sewing machines and vacuum cleaners. The court felt that the products were suffi-

ciently similar so that housewives would be confused as to origin. Admiral Corp. v. Penco, Inc., 203 F.2d 517 (2d Cir., 1953); accord, Admiral Corp. v. Price Vacuum Stores, Inc., 141 F.Supp. 796 (E.D.Pa.1956).

In National Drying Machinery Co. v. Ackoff, 129 F.Supp. 389, 391 (E.D.Pa.), aff'd., 228 F.2d 349 (3d Cir., 1955), cert. denied, 351 U.S. 906, 76 S.Ct. 694, 100 L.Ed. 1442 (1956) the court found that "National" is "almost as weak a mark as can be found", yet protected it in a closely related area of goods which it stated was in the line of normal expansion of the plaintiff's business.

In protecting "Slim" against the mark "Vita-Slim" both used on skim milk, the court stated the general rule "that one may not appropriate the entire mark of another and avoid a likelihood of confusion by the addition thereto of descriptive or otherwise subordinate matter." Bellbrook Dairies, Inc. v. Hawthorn-Mellody Farms Dairy, Inc., 253 F.2d 431, 432, 45 C.C.P.A. 842 (C.C.P.A. 1958).

Plaintiff in this action successfully opposed registration of "Bonnie Jonnie" for a liquid toilet bowl cleaner. The Commissioner found that plaintiff had continuously used BONNIE as its trademark for its various products long before the defendant commenced its use of "Bonnie Jonnie" in 1954, and that defendant's product was a household cleaning preparation which might well be included in plaintiff's line. The same retail outlets were used, and the prospective purchasers were likely to be the same. Proxite Products, Inc. v. Ball Bros., 118 U.S.P.Q. 460 (1958).

Many like instances of alleged infringement involving descriptive marks could be cited. However, as the Court of Appeals for this Circuit has stated, "Each case alleging trademark infringement must be judged on its own facts, and citation of authorities is not very helpful, except insofar as they show the general pattern." Harold F. Ritchie, Inc. v. Chesebrough-Pond's, Inc., 281 F.2d 755, 757 (2d Cir., 1960).

The ultimate test is the factual question of the likelihood of confusion by the ordinary prudent consumer of the particular goods. Nebraska Consol. Mills Co. v. Shawnee Milling Co., 198 F.2d 36 (10th Cir., 1952); see 15 U.S.C.A. § 1114(1).

The goods here involved are low-priced household products not calling for any great discrimination by the housewives for whose use they are designed. Ninety-five per cent of the plaintiff's and defendants' sales are within the New York metropolitan area, where their products are distributed through jobbers who then place them in the various retail outlets, which include food chains, independent groceries and hardware stores. In many instances, the products are sold in the same stores and, as the evidence indicated, often displayed on the same shelves or in close proximity to each other.

Both plaintiff and the defendants stated at the trial that they had received reports from consumers and salesmen indicating confusion between their products. A store-to-store survey of stores in upper Manhattan and the Bronx was taken by the plaintiff, in which instances of actual confusion by store employees were discovered.

The small distinction between BONNIE and BONNIE BRITE is likely to be overlooked by the purchaser, who may well group them together as coming from a single source. It seems reasonable to suppose that BONNIE is the distinctive word, and that little consideration will be given to "BRITE", a corruption of "bright", which is merely descriptive of the expected result from the use of the defendants' product. Therefore the Court finds that the likelihood of confusion between the plaintiff's and defendants' products is substantial, and concludes that the defendants' mark BONNIE BRITE infringes that of the plaintiff. Moreover, defendants in using BONNIE BRITE are unfairly competing with the plaintiff.

Defendants have submitted some 47 different third-party registrations containing the word "Bonnie". The products range from soil conditioners, to bras-

sieres and canned horse meat. Such a designation, which has been used by a large number of manufacturers and merchants for a great variety of goods, must of necessity be narrowly limited in each application. 1 Nims, Unfair Competition and Trade-Marks § 221 (4th ed. 1947). But it is true, as the plaintiff points out, that none of these registrations are in the household products field. It is also true that such use on other products, even if prior to that of the plaintiff, will not excuse the defendants, nor invalidate plaintiff's mark. Admiral Corp. v. Penco, Inc., 203 F.2d 517, 521 (2d Cir., 1953); Standard Brands, Inc. v. Smidler, 151 F.2d 34, 36 (2d Cir., 1945).

The defendants' counterclaim for unfair competition, based upon plaintiff's alleged copying of its labels, is without merit. Plaintiff uses a bright multi-colored tartan plain label, while the defendants use a red and yellow interwoven square label. The head of a young woman wearing a tam appears on plaintiff's label, while the defendants have a fanciful caricature of a small Scottish girl in native costume. Absent the similar marks, there is no likelihood of confusion between these labels. Moreover, there has been no showing of secondary meaning on the part of defendants' labels, which is a necessary prerequisite for relief, subject to limited exceptions not applicable here. Norwich Pharmacal Co. v. Sterling Drug, Inc., 271 F.2d 569 (2d Cir., 1959), cert. denied, 362 U.S. 919, 80 S.Ct. 671, 4 L.Ed.2d 739 (1960).

Defendants' registration, No. 600,872, of BONNIE BRITE will be cancelled as it infringes plaintiff's mark BONNIE. Plaintiff has not copied defendants' label, and the Court finds no unfair competition by the plaintiff, nor any conspiracy on the part of the additional individual defendants named in the counterclaim. A permanent injunction will issue in plaintiff's favor. No accounting for profits will be made as plaintiff has not shown that it is entitled to pecuniary damages. It is not clear whether the confusion between the marks has helped or hindered plaintiff's sales in light of the extensive advertising on defendants' part.

The defendants' motion to dismiss the complaint for lack of jurisdiction is denied. Plaintiff's motions to strike the second counterclaim insofar as it relates to a conspiracy, and to dismiss the counterclaim against the individual defendants, are granted.

The foregoing constitutes the Court's Findings of Fact and Conclusions of Law.

Settle order on notice.