**JOHNSON & JOHNSON, Plaintiff,**

v.

**COLGATE–PALMOLIVE COMPANY, Defendant.**

**Civ. A. No. 977–69.**

United States District Court,
D. New Jersey,
Civil Division.
June 27, 1972.

Riker, Danzig, Scherer & Brown, Newark, N. J., by Dickinson R. Debevoise,

Newark, N. J., Norman St. Landau, New Brunswick, N. J., and Daphne R. Leeds, Mason, Fenwick & Lawrence, Washington, D. C., of counsel for plaintiff.

Carpenter, Bennett & Morrissey, Newark, N. J., by Virginia D. Fenton and Walter I. Seligsohn, Newark, N. J., of counsel, Kaye, Scholer, Fierman, Hays & Handler, New York City, Milton R. Wessel, and Guy M. Blynn, New York City, of counsel for defendant.

## OPINION

GARTH, District Judge:

Plaintiff, Johnson & Johnson (hereinafter "Johnson") manufactures and sells an adult talcum powder having deodorant properties bearing the trademark "Shower to Shower." Defendant, Colgate-Palmolive (hereinafter "Colgate") manufactures and sells an aerosol deodorant and anti-perspirant bearing the trademark "Hour After Hour." The central issue presented here, and the test to be met by the plaintiff, is whether all the competent evidence offered to this Court carries "thorough conviction" that the Trademark Trial and Appeal Board erred in sustaining Colgate's opposition to the registration in the United States Patent Office of Johnson's trademark. Minnesota Mining & Mfg. Co. v. Carborundum Co., 155 F.2d 746 (3rd Cir. 1946).

On March 28, 1966, plaintiff applied to the United States Patent Office to register the term "Shower to Shower" as its trademark for a talcum powder product. The defendant opposed this application on the ground that plaintiff's proposed mark (when used on talcum powder) so resembles defendant's registered mark "Hour After Hour" (when used on personal deodorant), as to be likely to cause confusion, mistake or deception.[1] The Trademark Trial and Appeal Board unanimously sustained the defendant's opposition to plaintiff's registration. That tribunal held,

". . . [W]e are clearly of the opinion that the contemporaneous use of these marks for the specified goods is likely to cause confusion or mistake or to deceive." Colgate-Palmolive Company v. Johnson & Johnson, 162 U.S. P.Q. 423 (1969).

Plaintiff has commenced this action pursuant to Section 21(b) of the Trademark Act of 1946[2] in lieu of appeal to the Court of Customs and Patent Appeals.[3] Plaintiff contends that the trademark "Shower to Shower" does not so resemble defendant's trademark "Hour After Hour" as to be likely to cause confusion, or to cause mistake or deception and that consequently plaintiff is entitled to registration.

Defendant essentially argues that the decision of the Trademark Trial and Appeal Board is correct and that it should be affirmed by this Court. In addition, defendant has interposed a compulsory counterclaim pursuant to Rule 13(a) of the Federal Rules of Civil Procedure for trademark infringement.[4]

In compliance with the Court's requirement, the parties met in pretrial conferences and prepared a comprehensive proposed pretrial order. After the final pretrial conference held with the Court, both parties waived "trial" and submitted the issues on the pretrial order, the record of the administrative proceedings, discovery, exhibits and briefs, subject only to oral argument and the

---

1. "No trade-mark by which the goods of the applicant may be distinguished from the goods of others shall be refused registration on the principal register on account of its nature *unless* it—

. . . (d) Consists of or comprises a mark which so resembles a mark registered in the Patent Office or a mark or trade name previously used in the United States by another and not aban-

doned, *as to be likely, when applied to the goods of the applicant, to cause confusion, or to cause mistake, or to deceive . . . .*" 15 U.S.C. § 1052 (emphasis added).

2. 15 U.S.C. § 1071(b).

3. Jurisdiction of this Court is invoked pursuant to 15 U.S.C. § 1121.

4. *See* 15 U.S.C. § 1114(1).

rulings of the Court respecting certain contested evidential matters.[5]

As a predicate to the opinion of the Court and the conclusions of law, I make the following findings of fact.

## I.

### FINDINGS OF FACT

1. Plaintiff, Johnson, is a corporation organized and existing under the laws of the State of New Jersey.

2. Defendant, Colgate, is a corporation organized and existing under the laws of the State of Delaware.

3. This Court has jurisdiction over this matter pursuant to Title 15 of the United States Code, Sections 1071(b) and 1121.

4. Both Johnson and Colgate are well-known manufacturers of varied lines of products, including those commonly known as toiletries. Two of the products generally classified as toiletries are deodorant and talcum powder. (Pretrial Order, ¶ 3(a) (i))

5. On July 5, 1965, Colgate made its first sales in interstate commerce of roll-on and aerosol spray deodorants bearing the trademark "Hour After Hour." Colgate currently is selling both a deodorant and an anti-perspirant, in aerosol form, under this trademark. (Pretrial Order, ¶ 3(a) (i))

6. On March 3, 1966, Johnson made its first sales in interstate commerce of an adult talcum powder having deodorant properties bearing the trademark "Shower to Shower." (Pretrial Order, ¶ 3(a) (i))

7. Since July 5, 1965, Colgate's sales of goods bearing its trademark "Hour After Hour" and advertising expenditures in connection therewith have been as follows:

|  | Sales | Advertising |
|---|---|---|
| 1965 | $ 30,000 | 200,000 |
| 1966 | 500,000 | 800,000 |
| 1967 | 800,000 | 1,000,000 |
| 1968 | 1,412,000 | 1,400,000 |
| 1969 | 2,050,000 | 2,000,000 |
| 1970 | 9,924,000 | 9,306,000 |
| 1971 (6 mos.) | 5,393,000 | 3,275,000 |
|  | $20,109,000 | 17,981,000 |

(Exhibits J–16, J–18; Pretrial Order ¶ 3(a) (i))

8. Since March 3, 1966, Johnson's sales of goods bearing the trademark "Shower to Shower" and advertising expenditures in connection therewith have been as follows:

|  | Sales | Advertising |
|---|---|---|
| 1966 | $ 40,000 | 3,000,000 |
| 1967 | 3,000,000 | 1,000,000 |
| 1968 | 1,000,000 | 3,000,000 |
| 1969 | 2,000,000 | 1,000,000 |
| 1970 | 2,200,000 | 2,400,000 |
| 1971 (6 mos.) | 1,100,000 | 200,000 |
|  | $ 9,340,000 | 10,600,000 |

(Exhibit J–17; Pretrial Order ¶ 3(a)(i))

9. On October 1, 1965, Colgate filed an application in the United States Patent Office pursuant to the Trademark Act of 1946 to register the term "Hour After Hour" as its trademark for a personal deodorant. This application matured into Registration No. 815,592 on September 20, 1966. (Pretrial Order ¶ 3(a)(i))

10. Johnson filed an application in the United States Patent Office to register the term "Shower to Shower" as its trademark for talcum powder on March 28, 1966. Thereafter, Johnson's mark was published in the Official Gazette of the Patent Office on December 16, 1966. (Pretrial Order, ¶ 3(a) (i))

11. Colgate timely opposed on the ground that "Shower to Shower" when used on talcum powder so resembles "Hour After Hour" when used on personal deodorant, as to be likely to cause

5. See infra 1223 (Exhibit P–55); 1224 (Exhibits P–22 through P–54); and 1225 (Exhibits D–3 and D–4).

confusion, mistake or deception. (Pretrial Order, ¶ 3(a) (i))

12. After the presentation of testimony, briefs and oral arguments, the record of which is in evidence in this action, the opposition was sustained and registration refused by the Trademark Trial and Appeal Board in a unanimous opinion. (Pretrial Order, ¶ 3(a) (i))

13. After its first use of the "Hour After Hour" trademark, Colgate test marketed its deodorants in Kalamazoo and Grand Rapids, Michigan and Oklahoma City, Oklahoma. Test marketing was expanded to include Arkansas, Louisiana, New Mexico and Texas early in 1966. Marketing was extended to the Philadelphia area in July 1967 and to the Chicago area in May 1969. Since February 1970, distribution has been nationwide. (Pretrial Order, ¶ 3(a) (i))

14. After its first use of the "Shower to Shower" trademark, Johnson test-marketed its talcum powder in New Orleans and Indianapolis in late 1966. Marketing was extended to New England, the Middle and South Atlantic States and New York in May 1967. Since July 1967, distribution has been nationwide. (Pretrial Order, ¶ 3(a) (i))

15. Colgate's product and Johnson's product are sold to the public through the same types of retail outlets, namely supermarkets, chain and independent drug stores, variety stores, department stores, discount stores and other mass merchandisers, and the products are sometimes displayed side by side. (Pretrial Order, ¶ 3(a) (i))

16. The products of both parties are relatively inexpensive in price. (Pretrial Order, ¶ 3(a) (i))

17. The parties advertise their products under their respective trademarks in the same types of media, namely radio, television, magazines, newspapers and other periodicals, and oftentimes their advertisements appear in the identical media. (Pretrial Order, ¶ 3(a) (i))

18. The goods of the parties comprise toiletries such as a single producer might well be expected to make and sell through the same trade channels to the same average purchasers. (Exhibit J–23)

19. Deodorant and anti-perspirant is normally used to protect the body against underarm odor and moisture. While some persons may use body powder to protect against underarm odor and moisture, the purposes for which body powder is purchased often include protection against diaper rash and various skin irritations as well as the accumulation of moisture on many different areas of the body. (Exhibits J–1 and J–5)

20. Neither party has any evidence of actual confusion occasioned by the concurrent use of their respective trademarks on their respective products. (Pretrial Order, ¶ 3(a) (i))

II.

SCOPE OF REVIEW

This appeal is from the decision of the Patent Office Trademark Trial and Appeal Board, sustaining the opposition of Colgate to the registration by Johnson of the mark "Hour After Hour". The starting point in an inquiry into this Court's scope of review of that decision is Morgan v. Daniels, 153 U.S. 120, 14 S.Ct. 772, 38 L.Ed. 657 (1894), as it has been interpreted in subsequent opinions of the Court of Appeals for the Third Circuit.

In Minnesota Mining & Mfg. Co. v. Carborundum Co., 155 F.2d 746 (3rd Cir. 1946), the District Court held that plaintiffs were entitled to have a patent issued to them by the Commission of Patents, reversing the decision of the Patent Office Tribunal which had denied to plaintiffs the issuance of a patent. On appeal, the Court of Appeals held that the District Court had applied an incorrect standard for review. The judgment of the trial court was reversed and it was directed that the complaints be dismissed. In that case, Circuit Judge Biggs discussed the District Court's standard for review of a decision by a Patent Office tribunal,

"*Morgan v. Daniels* states a rule of law whereby a fact question must be

judged. *The question therefore is whether all competent evidence, 'new' and 'old', offered to the District Court carries 'thorough conviction' that the Patent Office erred.* [citation omitted] . . . The trial in a District Court is a trial de novo. But the decision of the Patent Office may not be reversed unless the evidence before the court carries thorough conviction that the Patent Office erred. In other words, a District Court may not reverse the decision of the Patent Office on a mere preponderance of the evidence. More is required. The District Court must find that the decision of the Patent Office was without substantial basis in the evidence or was wrong as a matter of law." 155 F.2d at 748. (emphasis added).

*Accord* Etten v. Lovell Mfg. Co., 225 F.2d 844 (3rd Cir. 1955), *cert. denied,* 350 U.S. 966, 76 S.Ct. 435, 100 L.Ed. 839 (1956); Radio Corp. of America v. Philco Corp., 275 F.Supp. 172 (D.N.J. 1967).

■ In the case *sub judice,* I am obligated to hold that the decision of the Patent Office as to confusing similarity of the two marks must be accepted as controlling, unless the contrary is established by evidence which in character and amount carries thorough conviction. *See* Esso Standard Oil Co. v. Sun Oil Co., 97 U.S.App.D.C. 154, 229 F.2d 37, 40, *cert. denied,* 351 U.S. 973, 76 S.Ct. 1027, 100 L.Ed. 1491 (1956) [Univis-Sunvis].

### III.

### CONFUSING SIMILARITY

■ Defendant predicates its argument in opposition to registration on 15 U.S.C. § 1052(d).[6] In determining whether the marks of these parties would be likely, when applied to their respective goods, to cause confusion, or to cause mistake or to deceive, I must consider not only the marks, but the goods and the whole situation, revealed by the record, as it bears on their distribution in the market, recognizing the practicalities of the commercial world. Witco Chemical Co. v. Whitfield Chemical Co., 418 F.2d 1403 (C.C.P.A. 1969). *See also* Telechron, Inc. v. Telicon Corp., 198 F.2d 903 (3rd Cir. 1952); Dresser Industries, Inc. v. Heraeus Engelhard Vacuum, Inc., 395 F.2d 457 (3rd Cir. 1968).

■ In addition to the product itself, and its uses, there are three other considerations—appearance, meaning and sound—relevant to the issue of whether the marks of plaintiff and defendant as applied to their respective products have a likelihood of confusion, mistake or deception as to be within the strictures of 15 U.S.C. § 1052(d). Esso Standard Oil Co. v. Sun Oil Co., *supra*; Watkins Products, Inc. v. Sunway Fruit Products, Inc., 311 F.2d 496 (7th Cir.), *cert. denied,* 373 U.S. 904, 83 S.Ct. 1291, 10 L.Ed.2d 199 (1963).

The Trademark Trial and Appeal Board found only the two factors of *meaning* and *sound* to be important. No mention is made of any similarity of appearance of the two competing marks, nor does the opinion attach significance to the essential differences between the products or the respective uses of each. The Board stated that,

" 'Hour After Hour' and 'Shower to Shower' are strikingly similar in sound and alliteration, and, while it is true as stressed by applicant that 'hour' and 'shower' have entirely different literal meanings, the marks in the entireties have generally similar connotations in that each suggests that the product to which it is respectively applied will afford the users thereof long lasting protection against body odors. Under these circumstances, we are clearly of the opinion that the contemporaneous use of these marks for the specified goods is likely to cause confusion or mistake or to deceive."

Undoubtedly, similarity in sound is a legitimate and logical consideration in

6. *See* note 1 *supra.*

determining the likelihood of confusion or mistake or deception. Sound may be of particular importance when we are dealing with products which are most frequently purchased by the spoken word. Krim-ko Corp. v. Coca Cola Bottling Co., 390 F.2d 728, 55 C.C.P.A. 903 (1968); American Cyanamid Co. v. United States Rubber Co., 356 F.2d 1008, 53 C.C.P.A. 994 (1966). Body powders, deodorants and anti-perspirants are clearly within that class of products.

It is clear that the phrases "Shower to Shower" and "Hour After Hour" are similar in sound, but such similarity exists only to the extent that "shower" and "hour" rhyme.[7] Both slogans are alliterative in that the same sound is repeated when the primary word in each slogan is repeated.[8] In addition, while the literal meanings of "Shower to Shower" and "Hour After Hour" may differ, the Board was correct in its statement that the general connotations of the competing marks as applied to their respective products are similar. Though the specific uses of the parties' products and the products themselves may be different (*see* discussion *infra*), they are intended to give long-lasting body protection and both marks effectively convey this message.

However, it would be incorrect for purposes of comparison to break down each mark to its simplest element or characteristic, for that is not the manner in which potential purchasers shop for the respective products of plaintiff and defendant. *Cf.* Phillips Petroleum Co. v. C. J. Webb, Inc., 442 F.2d 1376 (C.C.P.A. 1971). In the marketplace, a potential shopper is confronted by a totality of circumstances which ought to be considered in determining whether there is a likelihood that confusion, mistake

or deception will result. All relevant factors should be evaluated in their entirety as reflected by each mark and its respective product. Nehi Corp. v. Mission Dry Corp., 213 F.2d 950 (3rd Cir. 1954).

The marks "Shower to Shower" and "Hour After Hour" *as applied to their respective products* are not confusingly similar, nor is there a practical *likelihood* that a potential shopper will be confused, or deceived or mistaken by any similarities existing as to the parties' respective products.[9]

## IV.

### LIKELIHOOD OF CONFUSION

■ The likelihood of confusion of the parties' respective trademarks and products is slight when the totality of the circumstances is considered. Colgate is selling a deodorant and anti-perspirant, in aerosol form. Johnson is selling an adult talcum powder having deodorant properties. The question is then presented: Does the trademark "Shower to Shower" *when applied to body powder,* so resemble the trademark "Hour After Hour" *when applied to aerosol deodorant or antiperspirant* as to be *likely* to cause confusion, mistake or deception?

While both parties' products may be generally classified as toiletries, and while those products may be used to mask body odor or promote underarm dryness, I am convinced by the evidence that Johnson's body powder may be used for significantly different purposes.

Robert E. O'Connell, an advertising executive employed by Ted Bates & Company, testified on deposition that according to market surveys, body powder is used for medicinal reasons, *e. g.,* diaper rash and skin irritation. In addition, he

---

7. This degree of similarity is less than would be the case if the primary words in each mark were homonyms.

8. "Alliteration" is the repetition usually initially of a sound that is usually a consonant in two or more neighboring words or syllables. Webster's Third New International Dictionary (1966).

9. This does not, of course, preclude the possibility that some shoppers may be confused or mistaken. The relevant statute refers to a "likelihood" and not simply a mere possibility. 15 U.S.C. § 1052(d).

testified that body powder is used for "hot feet" and "for making clothing easier to put on." [10] On the other hand he testified that aerosol deodorant is used "to take away body odor." Antiperspirant is used "to control moisture and also the benefit of body odor—to take away body odor." [11]

Chester L. Kane, a product manager with Colgate, was deposed and testified that "there are some people who use [talcum powder] as a deodorant," but he was unable to say that talcum powder is *generally* used for such purposes. [12]

■ The parties have stipulated that their respective products are sold to the public through the same channels of marketing. Moreover, it is clear that at least with respect to some purchasers the respective products of the parties may be used for the same purpose, *i. e.*, protection against underarm odor and/or moisture. However, when the marks and functions of the respective products are considered together as bearing on their distribution in the market, I am convinced that there exists no *likelihood* of confusion, mistake or deception to an ordinarily prudent buyer. [13]

## V.

### TED BATES & COMPANY PRESENTATION

Johnson has offered in evidence a presentation [hereinafter "Exhibit P–55"], prepared by Colgate's advertising agency, Ted Bates & Company. Exhibit P–55 is entitled "Hour After Hour Deodorant Body Powder Marketing Plans,"

and it is dated July 1967. That exhibit consists of some seventy-two pages with three major sections: "Recommendation," "Market Data" and "Plans."

The thrust of this exhibit was a recommendation that a market test be conducted of "Hour After Hour" deodorant body powder.

A fair reading of the exhibit would indicate that Colgate's advertising agency considered personal deodorants and adult talcum powders as two separate and distinct products. [14] Further, the recommendation if accepted and implemented by Colgate would have resulted in:

1. The simultaneous marketing by Colgate of an adult talcum powder and an aerosol deodorant both marked "Hour After Hour"; and

2. Colgate marketing an adult talcum powder marked "Hour After Hour" in competition with other talcum powders, including plaintiff's "Shower to Shower." [15]

Despite these results, the agency presentation nowhere suggested or intimated either that Colgate's own two products would be confused with each other or that a likelihood of confusion by the public would occur as respects the plaintiff's product.

■ The defendant Colgate contends that Exhibit P–55 is irrelevant and immaterial and therefore inadmissible as evidence. It argues that Ted Bates & Company, the author of the document, is merely an advertising agency making its own proposals and that this does not bind Colgate. I do not agree that P–55 should

---

10. Deposition of Robert E. O'Connell at p. 23 (Exhibit J–3).

11. *Id.*

12. Deposition of Chester L. Kane at p. 111 (Exhibit J–1).

13. The test is whether the marks are sufficiently similar so as to be likely to deceive an *ordinary prudent buyer*—not a careless buyer who makes no examination. Dawn Donut Co. v. Day, 450 F.2d 332 (10th Cir. 1971).

14. The exhibit also contains suggested advertising copy for the new deodorant

powder which portrays a woman applying a talcum powder with deodorant qualities to her facial area, shoulder and calf. It is abundantly clear that for marketing purposes at least Colgate's advertising agency distinguished between an aerosol deodorant and a talcum powder with deodorant qualities.

15. It is clear throughout P–55 that one of the primary marketing objectives of the "Hour After Hour" talcum powder would be to "compete successfully with the new Johnson & Johnson entry—Shower-to-Shower . . . ."

be excluded from evidence. While it may be true that the statements and proposals of Bates may not bind Colgate, this does not necessarily mean that the exhibit is either immaterial or irrelevant.

Although I admit Exhibit P–55 into evidence, I do not find that the Bates presentation is determinative of the issues which I must decide. Nevertheless, I note that Exhibit P–55 is "new" evidence which was not before the Trademark Trial and Appeal Board and that the Bates presentation conspicuously fails to suggest any confusing similarity between the products.

## VI.

### " 'HOUR AFTER HOUR' IS A 'WEAK MARK' "

Johnson argues that the phrase "Hour After Hour" has been used by others in an ordinary, as opposed to trademark, connotation and that the phrase was neither originated by Colgate, nor is unique. Thus Johnson argues that "Hour After Hour" is a "weak mark" and entitled only to a limited or narrow scope of protection. *See* Westward Coach Mfg. Co. v. Ford Motor Co., 388 F.2d 627, 634 (7th Cir. 1968).

■ The *primary* function of a trademark is to identify the origin of the goods, and not their nature. Therefore, a trademark which is merely suggestive or descriptive of the ingredients, qualities, properties, functions, or uses of a product will be afforded little protection against its unauthorized use by others, unless such designation has acquired a special significance in the public mind known as secondary meaning. Proxite Products, Inc. v. Bonnie Brite Products Corp., 206 F.Supp. 511 (S.D.N.Y.1962).

In *Proxite Products, Inc., supra,* the court discussed the meaning and rationale of the classification of a trademark as "strong" or "weak":

"This distinction between technical trademarks and descriptive or suggestive marks has led to their classifica-

tion running from strong to weak, and the marks are given varying degrees of protection accordingly. A strong mark is given wide protection even upon completely unrelated products. A weak mark which is suggestive of the qualities of the product, or is generally laudatory, is given a relatively narrow range of protection.

The rationale behind classification as a weak mark is that one who chooses such a mark needs protection against use of his mark only on closely related goods; the public, accustomed to frequent use of the mark, would not be likely to attribute different goods bearing the mark to a single source." 206 F.Supp. at 515.

*See also* R. G. Barry Corp. v. A. Sandler Co., 406 F.2d 114 (1st Cir. 1969) ; *Westward Coach Mfg. Co., supra.*

■ However, the relative strength or weakness of a particular trademark is only evidence of a likelihood of confusion. That evidence is to be considered together with evidence pertaining to the resemblance of the marks, the degree of similarity of the products and their respective uses, their respective modes of marketing, and other factors which would affect the ordinarily prudent shopper. *Proxite Products, Inc., supra.*

In support of its contention that "Hour After Hour" is a "weak mark," Johnson has offered in evidence a series of exhibits (P–22 through P–50 and P–52). Those exhibits may generally be described as media advertisements for cosmetic products and toiletries of other manufacturers [16] which contain the phrase "hour after hour" or use the term "hour." In those exhibits that phrase or word is not used as a trademark, but rather the term is used to describe the long-lasting qualities of the product which is the subject of the advertisement. Johnson has also offered in evidence three exhibits (P–51, P–53 and P–54) which together indicate the extent to which two radio commercials

16. These products include "Lasting Beauty" makeup finish, "Lavoris" mouthwash and "Dial Soap."

for "Dial Soap" using the phrase "hour after hour," were broadcast.

Colgate contends that Exhibits P–22 through P–54 are irrelevant and immaterial. Furthermore, Colgate quite properly argues that the contested exhibits contain advertisements for only a few different products and that several of the exhibits are merely the same advertisement placed in different magazines. Although I find Exhibits P–22 through P–54 to be relevant to the issue of the relative strength of Colgate's mark, I attach little evidential weight to them.

■ As indicated, the phrase "hour after hour" has been used in its ordinary sense by some other manufacturers of toiletries and cosmetics. Moreover, the phrase is primarily descriptive of the asserted long-lasting bodily protection offered by the deodorant and anti-perspirant. The evidence is not sufficient to prove that the mark "Hour After Hour" has acquired a special significance and secondary meaning in the mind of the purchasing public. In light of the evidence which has been adduced in this case, I am compelled to hold that "Hour After Hour" as applied to deodorant and anti-perspirant is a relatively "weak mark." [17]

■ It is, of course, true that the amount expended for advertising, the sales volume and the geographic distribution of the product bearing the mark are relevant considerations when measuring the strength of a particular trademark. *Westward Coach Mfg. Co., supra.* Colgate has been marketing "Hour After Hour" deodorant and anti-perspirant since 1965. Colgate has expended some $17,981,000 for advertising in connection therewith and sales have exceeded $20,109,000. However, that Colgate's sales and advertising expenditures were substantial does not compel the conclu-

sion that the mark is strong. *Cf.* R. G. Barry Corp. v. A. Sandler Co., *supra.*[18]

Having considered the relative strength of Colgate's mark, the relative dissimilarity of the trademarks, the products and their respective functions, and the absence of any practical likelihood of confusion to an ordinary prudent shopper, I conclude that the scope of protection which should be given to Colgate's mark should not extend so far as to protect it against the use by Johnson of the mark "Shower to Shower" on adult talcum powder.

## VII.

### EXHIBITS D–3 AND D–4

Colgate has offered in evidence a decision of the Trademark Trial and Appeal Board in Johnson & Johnson v. Colgate Palmolive Co., Opposition No. 48,617 (filed October 29, 1968, as corrected). [Exhibit D–3]. In that proceeding, Colgate sought to register the mark "Hour After Hour" for deodorant *talcum powder* and *toilet soap.* Such registration was opposed by Johnson. The Trademark Board in that case concluded that Johnson could not be legally damaged by the registration of "Hour After Hour" for deodorant body powder and deodorant soap, predicating its decision on Colgate's use of "Hour After Hour" on its other products.

■ I do not read that decision to support the position of Colgate in the instant case. The thrust of that decision was that a purchaser would assume that "Hour After Hour" personal deodorant and "Hour After Hour" talcum powder emanated from the same manufacturer and that there would be no likelihood of confusion as to the origin of those products. Here, however, we are concerned with a very different issue as to wheth-

---

17. This determination predicated on the record before me, does not forever preclude "Hour After Hour" from acquiring a significant secondary meaning and becoming a "strong" mark.

18. Despite the fact that Colgate has been marketing "Hour After Hour" deodorant and anti-perspirant since 1965, only in 1971 (6 months) did the volume of sales of the product exceed the advertising expenditures in connection therewith.

er "Hour After Hour" personal deodorant would be likely to be confused with "Shower to Shower" body talcum powder. Hence, although I will admit Exhibit D-3 in evidence, and have considered same, I do not find it persuasive.

▉▉▉ Defendant also offers in evidence Exhibit D-4 which is a "Notice of Opposition" filed February 10, 1970 by Johnson in Johnson & Johnson v. Head-to-Toe Products, Opposition No. 50,473. In that case, Johnson opposed the registration of "Mini-Shower" for perfume and after-shower lotion. The exhibit is offered to show that Johnson believes there is a substantial likelihood of confusion between the products in that case, which Colgate contends are even more dissimilar than the products in issue in the instant case. I do not find that document to be relevant to the issues confronting me in the circumstances of this case, where we are dealing with an extensive record, different trademarks and different products. I therefore sustain Johnson's objection to the admission into evidence of Exhibit D-4.

## VIII.

### CONCLUSIONS OF LAW

I specifically make the following conclusions of law in addition to the legal conclusions reached and embodied in the foregoing opinion:

1. This Court has jurisdiction of the parties hereto and the subject matter of this litigation.

2. The trademark "Hour After Hour" has been duly registered on the Principal Register in the United States Patent Office on September 20, 1966, Registration No. 815,592. Said registration is valid, presently in full force and effect, and Colgate is the owner thereof.

3. Exhibits P-22 through P-55 and D-3 are admitted in evidence. Exhibit D-4 is not admitted in evidence.

4. "Shower to Shower" when used as a trademark for body powder does not so resemble "Hour After Hour" when that latter trademark is used for personal deodorant and anti-perspirant, as to be likely to cause confusion, or to cause mistake or to deceive.

5. All competent evidence offered to this Court carries thorough conviction that the Trademark Trial and Appeal Board erred in sustaining Colgate's opposition to the registration by Johnson of the trademark "Shower to Shower."

6. Johnson is entitled to the registration sought on its Application Serial No. 242,260.

## IX.

### CONCLUSION

My holding in this case, of course, is not intended to mean that I believe that no confusion, mistake or deception will ever occur when a potential shopper enters the marketplace to purchase one or the other of the products in issue. The statute clearly speaks of a "likelihood" and the entire record adduced before this Court fails to support the conclusion that the marks "Shower to Shower" and "Hour After Hour," when applied to the parties' respective products, are *likely* to cause confusion, or to cause mistake or to deceive as these terms are used in the statute.

As mentioned earlier, defendant has interposed a compulsory counterclaim for infringement pursuant to 15 U.S.C. § 1114. Since I have held that plaintiff's use of the mark "Shower to Shower" is not likely to cause confusion, or to cause mistake or to deceive, I accordingly hold that plaintiff's use of its mark has not infringed upon defendant's registered mark.

An appropriate Order shall be submitted by the parties forthwith. Each party shall bear its own costs.