**OR DA INDUSTRIES, LTD., Plaintiff,**

v.

**LEISURE LEARNING PRODUCTS, INC., Doe Manufacturers A and B, Roe Retailers X, Y and Z, Defendants.**

**No. 79 Civ. 3322.**

United States District Court,
S. D. New York.

Oct. 9, 1979.

---

Laurence Shiff, New York City, for plaintiff.

St. Onge, Steward, Johnston, Reens & Noe, Stamford, Conn., Gerard F. Dunne, New York City, for defendant Leisure Learning Products, Inc.; Louis H. Reens, Stamford, Conn., of counsel.

## OPINION

ROBERT J. WARD, District Judge.

Plaintiff Or Da Industries, Ltd. ("Or Da"), an Israeli corporation, brought this action under the Federal Trademark Act of 1946 ("the Lanham Act"), 15 U.S.C. §§ 1051–1127, against Leisure Learning Products, Inc. ("Leisure Learning"), and other unnamed manufacturers and retailers, alleging the infringement of six registered trademarks.[1] These trademarks were issued to Or Da during February, March and September of 1977, and are listed in the Patent Office's Principal Register. Jurisdiction is based on 15 U.S.C. § 1121 and 28 U.S.C. § 1338. The complaint asks for injunctive relief, actual damages, and punitive damages. Defendant, a Connecticut corporation, denies any infringement and counterclaims that Or Da has committed certain business torts against Leisure Learning.

Or Da seeks to preliminarily enjoin Leisure Learning from marketing a children's game defendant calls "Mr. Brain Builder." Plaintiff claims Leisure Learning's use of this name infringes Or Da's registered trademark "Brainy Blocks," the name Or Da uses on a competing product.

On September 10, 1979, after hearing the testimony of two witnesses and receiving some sixteen exhibits in evidence, the Court refused to grant a temporary restraining order and directed Leisure Learning to appear on September 21, 1979, to show cause why it should not be preliminarily enjoined from marketing its game "Mr. Brain Builder." At the September 21 hearing the Court received additional evidence by way of affidavits. For the reasons stated below, plaintiff's motion for a preliminary injunction is granted.

Or Da is an Israeli manufacturer of children's games which alleges that it has been selling its games in the United States continuously since 1974. Beginning in 1975, Leisure Learning Centers Inc., the parent corporation of defendant Leisure Learning, purchased Or Da games for resale in its own retail store and in franchised Leisure Learning Centers outlets. In 1976, the defendant Leisure Learning was formed by Leisure Learning Centers. At that time, Richard G. Bendett, defendant corporation's principal, entered into a distributorship arrangement with Or Da under which Leisure Learning was to purchase Or Da games for resale to retail outlets in the United States.[2]

In late 1977 a dispute arose between Or Da and Leisure Learning over the latter's failure to make payment on some $48,411 due Or Da,[3] and by mid-1978 the parties' business relationship was on the rocks. Or Da refused to make further shipments to Leisure Learning after its last shipment in June 1978. Claiming a contractual right to do so, Leisure Learning then manufactured

---

1. Hereinafter "defendant" refers only to Leisure Learning and not to the five unnamed defendants.

2. It remains unresolved whether Leisure Learning's distributorship was pursuant to an executed written agreement with Or Da or was based solely on an oral, course-of-dealings working arrangement. Apparently there were some contract negotiations between the parties in 1975 but it is unclear at this juncture whether an agreement was reached and an instrument executed. The determination of this issue, however, is not necessary to the resolution of the matter now before the Court.

3. This debt remains unpaid, although the principal on the debt owed Or Da by Leisure Learning does not appear to be in dispute. See affidavit of Richard G. Bendett, president of Leisure Learning, ¶ 4 (Sept. 19, 1979). Rather it would seem to be Bendett's precarious financial position that prevents his making good on the obligation of his company.

near perfect copies of the Or Da products Leisure Learning needed to fill outstanding orders. One of the products defendant copied was Or Da's "Brainy Blocks" game. A February 1979 injunction issued by the New York State Supreme Court restrained defendant from further copying Or Da's game configuration and packaging. It was sometime within the next few months that Leisure Learning began the production and marketing of the game it now calls "Mr. Brain Builder."

Or Da's application for trademark registration for "Brainy Blocks" was granted on September 6, 1976, though plaintiff claims the game made its first appearance as "Brainy Blocks" on the United States market some three years earlier. "Brainy Blocks" is a tangram game consisting of variously sized plastic, geometric-shaped pieces and cards printed with the outlines of figures. The object of the game is to use some or all of these pieces to fill the space within each figure outline. The figure cards are numbered in increasing order of difficulty, with the higher numbered cards generally requiring more pieces, and more thinking, to complete. The "Brainy Blocks" game Or Da marketed through Leisure Learning contained thirty-two geometric pieces and eighteen cards.

At the present time Or Da markets a line of three "Brainy Blocks" games. This line consists of "Approaching Brainy Blocks," "Basic Brainy Blocks," and "Creative Brainy Blocks."[4] "Approaching Brainy Blocks" is designed for younger children (aged 4 to 6) and contains sixteen geometric pieces. "Basic Brainy Blocks" is directed at children aged 6 to 8 and like its predecessor "Brainy Blocks" contains thirty-two pieces and eighteen cards. "Creative Brainy Blocks" has eighty pieces and is designed for children over age eight.

Leisure Learning's "Mr. Brain Builder" is strikingly similar to Or Da's earlier "Brainy Blocks" and to its current "Basic Brainy Blocks." The box containing defendant's game is the same size and the same shape as the boxes for these two Or Da games. Although the dress of defendant's game differs from the dress of Or Da's "Brainy Blocks" and "Basic Brainy Blocks," Leisure Learning's "Mr. Brain Builder" is essentially the same game as the two Or Da products. It contains thirty-two geometric pieces and thirty figure cards, and is played the same way as "Brainy Blocks."

Plaintiff contends that defendant's use of "Mr. Brain Builder" infringes its registered trademark "Brainy Blocks," claiming that "Mr. Brain Builder" sounds, appears and means the same as "Brainy Blocks." Maintaining that the two names are confusingly similar, Or Da asserts that the consumer is likely to mistake Leisure Learning's tangram game for its own. Plaintiff claims it will be irreparably harmed if defendant is permitted to continue marketing its game as "Mr. Brain Builder." Defendant acknowledges that its game competes with and is marketed through the same channels of trade as Or Da's game but argues that "Mr. Brain Builder" is not confusingly similar to "Brainy Blocks."

 Recent cases in this Circuit have removed any remaining doubt as to the showing a party must make to prevail on a request for preliminary injunctive relief. As articulated by the court in *Jackson Dairy, Inc. v. H. P. Hood & Sons, Inc.*, 596 F.2d 70, 72 (2d Cir. 1979) (per curiam) (footnote omitted):

> The standard in the Second Circuit for injunctive relief clearly calls for a showing of (a) irreparable harm and (b) either (1) likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief.

This standard was reiterated in *Seaboard World Airlines, Inc. v. Tiger International,*

---

4. The mark "Brainy Blocks" remains the dominant name on each of these games. The adjectives distinguishing the three products in the "Brainy Blocks" line are printed in decidedly smaller type than the trademarked name (about one-half size) and clearly are meant only to be descriptive of the level of difficulty of each "Brainy Blocks" game.

*Inc.*, 600 F.2d 355, 359 (2d Cir. 1979), and *Jack Kahn Music Co., Inc. v. Baldwin Piano & Organ Co.*, 604 F.2d 755 (2d Cir. 1979). Moreover, as the *Jack Kahn* court emphasized, the party seeking a preliminary injunction must show that irreparable injury is probable if the injunction does not issue. The possibility of such injury alone is not enough. A court in this Circuit cannot "regard as sufficient proof of a lack of any remedy at law a mere speculation that there is a possibility that the party seeking the injunction may in some unproved way suffer loss or damage." *Id.* at 759. This standard applies where preliminary injunctive relief is sought from an alleged trademark infringement. *Selchow & Righter Co. v. McGraw-Hill Book Co.*, 580 F.2d 25, 27 (2d Cir. 1978).

■ The Court is satisfied that plaintiff has shown it probably will succeed on the merits of its claim that defendant infringed its "Brainy Blocks" trademark and believes plaintiff is likely to suffer irreparable injury if defendant is permitted to continue marketing its competing product as "Mr. Brain Builder." The name defendant has chosen to use for its tangram game is sufficiently similar to plaintiff's to create the likelihood that prospective purchasers will be confused as to the source of the games. The probable dilution in the value of plaintiff's trademark resulting from defendant's use of a similar name would result in harm that could not easily be translated into monetary damages, and it would be almost equally difficult to assess the damage done to plaintiff by the loss of sales resulting from defendant's use of an infringing mark.

To succeed on the merits of its infringement claim plaintiff must, as a threshold matter, establish that "Brainy Blocks" is a valid trademark and entitled to protection.

[A] mark found to be suggestive, arbitrary or fanciful (*i. e.*, more than merely descriptive) is entitled to protection without proof of secondary meaning. . . . [T]he decision of the Patent and Trademark Office to register a mark without requiring proof of secondary meaning affords a rebuttable presumption that the mark is more than merely descriptive.

*McGregor-Doniger Inc. v. Drizzle Inc.*, 599 F.2d 1126, 1132 (2d Cir. 1979), *citing Abercrombie & Fitch Co. v. Hunting World, Inc.*, 537 F.2d 4, 11 (2d Cir. 1976). It does not appear that the Patent Office required plaintiff to establish secondary meaning before registering its trademark, nor has defendant suggested otherwise. Defendant has made no showing to rebut a presumption that Or Da's mark is more than descriptive.

■ Plaintiff's mark is not descriptive. There is no dispute that Or Da's use of the word "blocks" gives some indication of the nature of the product, as the game does contain geometric tile pieces resembling blocks, and the Court agrees that the inclusion of "brain" suggests a child would have to apply cognitive skills to play the game. This, however, hardly renders the name merely descriptive. Denominating the product as "Brainy Blocks" in no way "conveys an immediate idea of the ingredients, qualities or characteristics of the goods." *Abercrombie & Fitch Co. v. Hunting World, Inc., supra*, 537 F.2d at 11, *quoting Stix Products, Inc. v. United Merchants & Manufacturers Inc.*, 295 F.Supp. 479, 488 (S.D.N.Y.1968). The term at least is suggestive, as "it requires imagination, thought and perception to reach a conclusion as to the nature of [plaintiff's] goods." *Id.* Thus, finding the mark to be more than merely descriptive, the Court need not require proof of secondary meaning to afford "Brainy Blocks" trademark protection.[5]

---

5. The decisions in this Circuit have classified terms into four categories for trademark purposes. In ascending order of trademark strength, these categories are: (1) generic, (2) descriptive, (3) suggestive and (4) arbitrary or fanciful. *See, e. g., McGregor-Doniger Inc. v. Drizzle Inc., supra*, 599 F.2d at 1131. "Brainy Blocks," of course, has not become a generic term and, as noted above, is more than descriptive. Plaintiff suggests that its mark is both arbitrary and fanciful. With this the Court cannot agree. In *Abercrombie & Fitch Co. v. Hunting World, Inc., supra*, 537 F.2d at 11 n. 12, the court of appeals wrote:

As terms of art, the distinctions between suggestive terms and fanciful or arbitrary terms

Trademark infringement under section 32(1)(a) of the Lanham Act, 15 U.S.C. § 1114(1)(a), occurs when the nonconsensual use of a "colorable imitation of a registered mark . . . is likely to cause confusion, or to cause mistake, or to deceive." The weighing of a number of factors must necessarily enter into any consideration of the likelihood of confusion. Factors appropriate to the evaluation of confusion in trademark infringement cases involving different products were suggested by the court in *Polaroid Corp. v. Polarad Electronics Corp.*, 287 F.2d 492, 495 (2d Cir. 1961). These factors were later applied in substantially the same form to infringement actions involving competing products. In *Grotarian, Helfferich, Schulz, Th. Steinweg Nachf. v. Steinway & Sons*, 523 F.2d 1331, 1336 (2d Cir. 1975), the court listed as these seven factors:

"the strength of the [allegedly infringed] marks; the alleged infringer's purpose in adopting its marks; the degree of similarity between the marks; the degree of similarity between the products; the competitive proximity of the products; actual confusion; and the degree of care likely to be exercised by consumers."

*See also B & L Sales Associates v. H. Daroff & Sons, Inc.*, 421 F.2d 352, 354 (2d Cir.), *cert. denied*, 398 U.S. 952, 90 S.Ct. 1873, 26 L.Ed.2d 292 (1970), and *Kiki Undies Corp. v. Promenade Hosiery Mills, Inc.*, 411 F.2d 1097, 1099 (2d Cir. 1969), *cert. dismissed*, 396 U.S. 1054, 90 S.Ct. 707, 24 L.Ed.2d 698

(1970). The Court has considered each of the factors as they relate to the case at hand.

Defendant's game competes directly with the plaintiff's three-game "Brainy Blocks" product line. Given that defendant's game was developed directly from plaintiff's concept, it is not surprising that Leisure Learning's game and Or Da's "Basic Brainy Blocks" are nearly identical products.

The parties' games can be expected to compete in the same stores for sales to the same class of customers. A large percentage of retail stores now carrying "Brainy Blocks" games—perhaps the vast majority of these stores—first purchased the product from the defendant when it was plaintiff's distributor. Defendant already has sought—and gives no indication it will not continue to seek—to market its competing product through those same outlets to which it distributed Or Da games.

■ As indicated earlier, Or Da's "Brainy Blocks" is a suggestive rather than descriptive mark. It is not, as defendant contends, a weak mark entitled only to minimal protection. Plaintiff, of course, has no exclusive right to the use of "brain" in its mark. The registered trademarks of many other products designed to present an intellectual challenge utilize this word.[6] But, as defendant itself suggests, "it would be incorrect for purposes of comparison to break down each mark to its simplest element or characteristic . . . . All relevant fac-

---

may seem needlessly artificial. Of course, a common word may be used in a fanciful sense; indeed one might say that only a common word can be so used, since a coined word cannot first be put to a bizarre use. Nevertheless, the term "fanciful", as a classifying concept, is usually applied to words invented solely for their use as trademarks. When the same legal consequences attach to a common word, i. e., when it is applied in an unfamiliar way, the use is called "arbitrary." The mark in issue here appears to this Court to be neither arbitrary nor fanciful.

**6.** Nine examples of such trademarks are presented in ¶ 7, affidavit of Richard G. Bendett (September 19, 1979):

| Number | Date of First Use | Mark | Product |
|---|---|---|---|
| 640,972 | April 1976 | Big Brain | Toy Vehicles |
| 803,380 | Jan. 1965 | Brain Buster | Puzzle-Type Parlor Game |
| 831,755 | Jan. 1966 | Bird Brain | Card-Type Game |
| 912,775 | May 1969 | Brain Teaser | Puzzle-Type Parlor Game |
| 940,415 | July 1970 | Brain Twister | Puzzle-Type Parlor Game |
| 966,435 | May 1972 | Brainstorm | Game |
| 1,081,189 | Nov. 1976 | Prof. Braine | Dolls |
| 1,081,903 | Feb. 1977 | Brain Waves | Board Game |
| 1,092,894 | April 1977 | Brains & Bull | Board Game |

tors should be evaluated in their entirety as reflected by each mark and its respective product." *Johnson & Johnson v. Colgate-Palmolive Co.,* 345 F.Supp. 1216, 1222 (D.N.J.1972).[7]

■ Regarding the degree of similarity between the marks, the Court finds that defendant's "Mr. Brain Builder" bears a sufficient similarity to plaintiff's "Brainy Blocks" to convey to the consumer the impression that the games come from the same source. This is all that is required for the similarity to give rise to a likelihood of confusion. "The law does not require that trademarks be carefully analyzed and dissected by the purchasing public." *McGregor-Doniger Inc. v. Drizzle Inc., supra,* 599 F.2d at 1134. In the case of competing products, "[t]he test is not whether the consumer will know the difference if he sees the competing products on the same shelf. It is whether he will know the difference if ['Mr. Brain Builder'] is *singly* presented and he has heard of ['Brainy Blocks']." *American Home Products Corp. v. Johnson Chemical Co.,* 589 F.2d 103, 107 (2d Cir. 1978). The Court believes "Mr. Brain Builder" would fail such a "single presentation" test.

Leisure Learning's "Mr. Brain Builder" game and Or Da's "Brainy Blocks" games appear to be rather unique products. The Court has been presented with no evidence that there are similar games on the American market.[8] Moreover, on the basis of the evidence thus far presented, it would appear that Or Da's tangram game would be the only one like it on the market if its distributorship arrangement with Leisure Learning had not fallen through and defendant had not begun marketing its game. Thus, although the dress of the products may be different, the similarity of the names taken in the context of the uniqueness of the products strongly suggests confusion is likely.

■ "Mr. Brain Builder" and "Brainy Blocks" exhibit substantial similarities in sound, appearance and meaning.[9] Both marks used the word "brain" and in neither case does it describe the product. "Builder" and "blocks" have similar connotations and sound somewhat alike. Both words begin with a plosive "B," followed by the distinctive sound of the letter "L." In meaning the two words suggest construction—a builder is one who constructs; blocks are used in construction—and the suggestion that the game offers the "building blocks" of brain development is common to both products. The two marks employ identical alliteration. Neither defendant's use of "Mr." in an attempt to personify its mark nor its display of "Leisure Learning" below the mark appreciably diminishes the likeli-

---

7. In *Johnson & Johnson* the court found that the trademark "Shower to Shower" for body powder did not infringe "Hour After Hour" for aerosol deodorant and antiperspirant. The *Johnson & Johnson* court held that the products were different and did not compete and ruled that "Hour After Hour" was a weak mark entitled only to limited protection. 345 F.Supp. at 1224.

8. While there may, of course, be similar games on the market, almost surely there is no such game bearing a name like those here. The Court disagrees with defendant's contention that the tangram puzzle made by S.J. Miller Co. of Boulder, Colorado, Bendett aff., ¶ 8 and ex. AH (September 19, 1979), is a similar product. This product is a five-piece puzzle called "Brain Teaser," in which the pieces are to be placed together to form a square. It is not at all like plaintiff's children's game where a larger and varying number of pieces are used to form a variety of shapes.

9. Similarity of sound, appearance or meaning may be enough to warrant a finding that confusion is likely. *See, e. g., American Home Products Corp. v. Johnson Chemical Co., supra,* 589 F.2d at 107 ("Roach Inn" found to infringe "Roach Motel"); *Masterpiece of Pennsylvania, Inc. v. Consolidated Novelty Co.,* 368 F.Supp. 550 (S.D.N.Y.1973) ("Alpine King" infringed "Mountain King"); *Burger Chef Systems, Inc. v. Burger Man, Inc.,* 492 F.2d 1398 (C.C.P.A. 1974) ("Burger Man" found to infringe "Burger Chef"); and *Hancock v. American Steel & Wire Co. of New Jersey,* 203 F.2d 737, 40 CCPA 931 (1953) ("Tornado" found confusingly similar to "Cyclone"). For an extensive compilation of marks found confusing because of similarity of appearance, sound or meaning, *see* 3 R. Callmann, *Unfair Competition, Trademark and Monopolies* § 82.1 (1969 & Supp.1978).

hood of confusion.[10] *See Miles Shoes, Inc. v. R.H. Macy & Co.*, 199 F.2d 602, 603 (2d Cir. 1952), *cert. denied*, 345 U.S. 909, 73 S.Ct. 650, 97 L.Ed. 1345 (1953) ("Miles Gro-Pals" infringed "Gro-Shoe").

Leisure Learning consciously imitated Or Da's product and by adopting such a similar name "has chosen to inch as close to the plaintiff's mark as [it] believes [it] safely can." *J.R. Wood & Sons, Inc. v. Reese Jewelry Corp.*, 278 F.2d 157, 160 (2d Cir. 1960) (Friendly, J., dissenting). Unquestionably defendant's intent was to capitalize on plaintiff's reputation. Though as plaintiff's sole United States distributor Leisure Learning surely was instrumental in building whatever good will Or Da has in its "Brainy Blocks" trademark, these prior efforts on behalf of plaintiff's product make it no less objectionable for Leisure Learning now to select a name for its competing product so close to Or Da's trademark as to appropriate Or Da's good will. The Court thus has no difficulty finding Leisure Learning's use of the "Mr. Brain Builder" mark to have been in bad faith.

■ There has been no proof actual confusion resulted from the similarity of plaintiff's and defendant's marks. Plaintiff offered the testimony of Michael A. Weisman, president of Skye Marketing Corporation, Or Da's current United States distributor, to prove actual confusion, but Mr. Weisman's testimony was of little assistance, as it dealt only with the reactions of retailers and not with that of the consuming public. Fortunately for plaintiff, however, the absence of proof of actual confusion does not preclude the Court from granting injunctive relief. A " 'showing of actual confusion is not necessary and in fact is very difficult to demonstrate' with reliable proof." *Scarves by Vera, Inc. v. Todo Imports Ltd.*, 544 F.2d 1167, 1175 (2d Cir. 1976), *quoting W.E. Bassett Co. v. Revlon, Inc.*, 435 F.2d 656, 662 (2d Cir. 1970). *See also Gold Master Corp. v. Miller*, 380 F.2d 128, 130 (2d Cir. 1967), and *George Washington Mint, Inc. v. Washington Mint, Inc.*, 349 F.Supp. 255, 262 (S.D.N.Y.1972).[11]

■ Finally, in evaluating the likelihood of confusion in trademark infringement cases, trial courts are instructed to consider the level of sophistication of the purchasers of the products in question. *McGregor-Doniger Inc. v. Drizzle Inc.*, *supra*, 599 F.2d at 1137. The Court need pause only briefly here, however, as it seems clear that the prospective purchasers of a relatively inexpensive children's game will not expend a great deal of effort studiously comparing Or Da's games with their Leisure Learning counterpart. As a consequence, it cannot be expected that the confusion resulting from the similarity of "Brainy Blocks" and "Mr. Brain Builder" will be dispelled by careful consumer examination.[12]

---

**10.** Defendant maintains that it has used "brain" and "builder" in a descriptive sense, somehow conveying a message that the game is designed to improve a child's intellect. However, a name describing the objective of a game does not necessarily convey any idea of the contents, quality or characteristics of the game and thus would not *ipso facto* be a descriptive mark. *Stix Products, Inc. v. United Merchants & Manufacturers Inc.*, *supra*, 295 F.Supp. at 488. As with plaintiff's mark defendant's name is at best suggestive of the nature of the product.

Even if this Court harbored some doubt about the similarity of the two marks it would be compelled to grant plaintiff its injunction. "One who adopts the mark of another for similar goods acts at his own peril and any doubt concerning the similarity of the marks must be resolved against him." *American Home Products v. Johnson Chemical Co.*, *supra*, 589 F.2d

at 107. *See also United Merchants & Manufacturers, Inc. v. R.A. Products Inc.*, 404 F.2d 399, 400 (C.C.P.A.1968). Moreover, in this Circuit "numerous decisions have recognized that the second comer has a duty to so name and dress his product as to avoid all likelihood of consumers confusing it with the product of the first comer." *Harold F. Ritchie, Inc. v. Chesebrough-Ponds, Inc.*, 281 F.2d 755, 758 (2d Cir. 1960).

**11.** "Moreover, since reliable evidence of actual instances of confusion is practically almost impossible to secure, particularly at the retail level, in the final analysis the decision must rest on the court's conviction as to possible confusion." *Miles Shoes, Inc. v. R.H. Macy & Co.*, *supra*, 199 F.2d at 603.

**12.** *Cf. Programmed Tax Systems, Inc. v. Raytheon Co.*, 419 F.Supp. 1251, 1254 (S.D.N.Y.

Having determined it likely that plaintiff will succeed on the merits of its trademark infringement claim with respect to its "Brainy Blocks" mark, the Court must decide whether it is probable plaintiff will be injured irreparably if a preliminary injunction does not issue.[13] Irreparable injury is injury for which a monetary award will not provide adequate compensation. "[W]here money damages is adequate compensation a preliminary injunction will not issue." *Jackson Dairy, Inc. v. H.P. Hood & Sons, supra,* 596 F.2d at 72.

If this Court as trier of fact could measure the loss of good will associated with the dilution in value of plaintiff's trademark and could calculate the lost sales of "Brainy Blocks" games attributable to Leisure Learning's marketing "Mr. Brain Builder," plaintiff's request for preliminary injunctive relief would be denied. But, as courts in trademark infringement cases have so often recognized, "to prove the loss of sales due to infringement is . . . notoriously difficult." *Omega Importing Corp. v. Petri-Kine Camera Co.,* 451 F.2d 1190, 1195 (2d Cir. 1971). *See also Selchow & Righter Co. v. McGraw-Hill Book Co., supra,* 580 F.2d at 28 & n. 2. Moreover, Or Da's distributor Weisman testified that "Brainy Blocks," as a children's game, is very much a seasonal item, selling especially well during the months before Christmas.

Measuring lost profits is particularly difficult for a product whose sales volume increases dramatically during a peak season. *Menley & James Laboratories Ltd. v. Approved Pharmaceutical Corp.,* 438 F.Supp. 1061, 1068 (N.D.N.Y.1977) (allergy medication during hay fever season); *Masterpiece of Pennsylvania, Inc. v. Consolidated Novelty Co.,* 368 F.Supp. 550, 553 (S.D.N.Y. 1973) (artificial Christmas trees).

The likelihood of serious dilution in trademark value by continued infringement also can provide a basis for finding irreparable injury. *Hills Bros. Coffee, Inc. v. Hills Supermarkets, Inc.,* 428 F.2d 379, 381 (2d Cir. 1970). Plaintiff need not show it could never recover from the alleged trademark infringement. It is enough that the infringement materially retards Or Da's building good will in the "Brainy Blocks" mark. *George Washington Mint, Inc. v. Washington Mint, Inc., supra,* 349 F.Supp. at 263. As Judge Gurfein observed in *George Washington Mint, id.:* "If time is given to the defendant to move into the same competitive market there would inevitably begin an attrition of the aura of exclusivity appropriated to the plaintiff's good will. It would tend to take the plaintiff's reputation out of its own control."

Plaintiff's product has been on the American market for at least four years. First

---

1976) (purchasers of computer and tax-system products highly sophisticated and not likely to be confused as to product purchased).

13. In *American Home Products Corp. v. Johnson Chemical Co., supra,* 589 F.2d at 106, the court in its only discussion of irreparable injury said: "There is no question that irreparable harm would result from a failure to enjoin if the plaintiff ultimately succeeds on the merits." Plaintiff here contends that this statement authorizes this Court to presume irreparable injury is likely if it finds plaintiff's trademark has been infringed. The *American Home Products* court cited *Omega Importing Corp. v. Petri-Kine Camera Co.,* 451 F.2d 1190, 1195 (2d Cir. 1971), in support of this statement. In *Omega Importing* the court observed that in the case of competing products bearing identical marks there is "such high probability of confusion, [that] injury irreparable in the sense that it may not be fully compensable in damages almost inevitably follows." *Id. See* J. Gilson, *Trademark Protection and Practice* § 8.07 at p.

8–58 (1974). This theme recently reappeared in *In the Matter of Vuitton et Fils S.A.,* 606 F.2d 1, (2d Cir. July 25, 1979) (per curiam), where, in a trademark infringement action alleging the sale of counterfeit Vuitton goods, the court of appeals directed the district court to issue *ex parte* a temporary restraining order. In *Vuitton* the court said: "In a trademark infringement case such as this, a substantial likelihood of confusion constitutes, in and of itself, irreparable injury sufficient to satisfy the requirements of Rule 65(b)(1)." *Id.* Nevertheless, this Court believes the court of appeals has yet to hold that the mere presentation of a prima facie case of trademark infringement automatically means the required showing of irreparable injury has been made. *See Selchow & Righter Co. v. Book-of-the-Month Club,* 192 U.S.P.Q. 530, 533 (S.D.N.Y.1976). In any event, resolution of this question is not necessary to a decision here.

through defendant Leisure Learning and now through its current distributor, Skye Marketing, Or Da has sought to establish a reputation in the United States as a manufacturer of educational games for children. Plaintiff considers "Brainy Blocks" its flagship game.[14] It seems clear to this Court that the continued marketing of defendant's competing game as "Mr. Brain Builder" would significantly impede Or Da's ongoing efforts to establish this reputation. Thus, in light of the above, the Court finds plaintiff has demonstrated a sufficient likelihood of irreparable injury to warrant preliminary injunctive relief.

Accordingly, plaintiff's motion is granted. Pending a final determination of this action, Leisure Learning shall be enjoined from selling, distributing and promoting its tangram game under the name "Mr. Brain Builder" or under any similar name. The foregoing constitutes the Court's findings of fact and conclusions of law.

Settle order on notice.

---

**14.** *See* affidavit of Yitzhak Segal, Managing Director of Or Da (September 18, 1979). Although there is some disagreement as to the proportion of Or Da sales the "Brainy Blocks" line constitutes, the parties do not dispute that "Brainy Blocks" easily is one of Or Da's leading sellers, if not its top seller.